197JHAWC                    Teleconference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    ATLANTA HAWKS, LP, et al.,

4                 Plaintiffs,

5            v.                              11 Civ. 5369 PGG

6    MATT BONNER, et al.,

7                 Defendants.

8    ------------------------------x

9                                           September 7, 2011
                                            5:00 p.m.
10

11

12   Before:

13                   HON. PAUL G. GARDEPHE,

14                                    District Judge

15

16                       APPEARANCES

17

18

     SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP (NYC)
19        Attorneys for plaintiffs
     BY:  JEFFREY A. MISHKIN, Esq.
20        ANTHONY JOSEPH DREYER, Esq.
                    Of counsel
21
     DEWEY & LeBOEUF, LLP (NYC)
22        Attorneys for defendants
     BY:  JEFFREY L. KESSLER, Esq.
23        DAVID GREENSPAN, Esq.
                    Of counsel
24

25

     SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

197JHAWC                    Teleconference

1            (Teleconference in chambers)

2            (Case called)

3            THE COURT:  Okay.  I should tell you both that I do

4    have a court reporter, so I would ask you to identify yourself

5    before you speak so that we have an accurate record.

6            This is a premotion conference to discuss the

7    defendants' desire to file a motion to dismiss.  The defendants

8    claim that there is no actual case or controversy and that,

9    accordingly, this Court lacks subject matter jurisdiction.

10           Plaintiffs contend that defendants' repeated threats

11   to bring an antitrust action, together with certain

12   authorizations they obtained from the players to bring such an

13   action as well as the players' alleged long history of bringing

14   antitrust cases against the league, provide a sufficient basis

15   for this Court's exercise of subject matter jurisdiction.

16           Based on the correspondence I've received from the

17   parties, it is not clear to me at this stage that there is a

18   good-faith basis for a motion to dismiss.  I have reviewed the

19   cases the defendants have cited in their August 5th, 2011

20   letter.  I do not find them persuasive, beginning with the

21   Youngels case, which is the Second Circuit summary order.

22   Summary orders, of course, have no precedential effect.  Even

23   if the case had precedential effect, it concerns a provision in

24   a collective bargaining agreement that the defendant had never

25   invoked and never threatened to invoke.

1            The Newline case cited by the defendants is similarly

2    not on point because it concerned a master license agreement

3    that the plaintiffs had never signed.  As Judge Stein said in

4    that case, "There is no existing relation between the parties

5    to settle or clarify.  Any harm that may arise under a contract

6    not yet entered into is in this instance necessarily

7    speculative."

8            The NHL case involves a somewhat similar scenario to

9    what we have here in that the league brought a declaratory

10   judgment action seeking a ruling that its "equalization rules"

11   did not violate the antitrust laws.  The court dismissed the

12   case for lack of subject matter jurisdiction, finding that

13   there there was no actual case or controversy.

14           It does appear to me from what I have seen so far that

15   the factual record in this case appears different, the factual

16   record in the NHL case appears quite different, at least based

17   on what I have seen so far, from the allegations of the

18   complaint in this action.

19           In the NHL case, the players' union stated in the

20   letter to the league that were the owners to impose the terms

21   of an allegedly expired collective bargaining agreement on the

22   players, such an action, "plainly would violate the antitrust

23   laws and would subject the league and its teams to treble

24   damages."

25           The court went on to find, however, that the union had

197JHAWC                    Teleconference

1   no standing to bring an antitrust action and concluded, as to

2   the individual player defendants, that the threat in the letter

3   about antitrust litigation was no more than mere puffery, or as

4   the court said, and I quote, "nothing more than typical

5   collective bargaining posturing."

6          The court's finding in this regard was supported by

7   affidavits from each of the defendants, stating that they had

8   no intention of bringing an antitrust action, that they had

9   never expressed any intention to bring such an action and that

10   they had not authorized anyone to convey a threat of such

11   litigation on their behalf.

12          The court went on to state, and I quote, "In light of

13   these uncontroverted affidavits, this Court cannot find that

14   plaintiffs have demonstrated a concrete dispute of sufficient

15   immediacy to provide subject matter jurisdiction over this

16   declaratory judgment action."

17          Here, in contrast, plaintiffs assert:

18          One, defendants have consistently raised the threat of

19   an antitrust action during the labor negotiations;

20          Two, they have obtained authorizations from the

21   players that would permit them to pursue the antitrust

22   litigation option; and

23          Three, the union and its players have a long history

24   of filing antitrust actions in the midst of collective

25   bargaining negotiations.

197JHAWC                     Teleconference

1          Plaintiffs have also cited cases from the circuit

2    standing for the proposition that once a party has threatened

3    litigation, it may not deprive a court of subject matter

4    jurisdiction by saying that it had changed its mind or

5    presently does not intend to bring suit.  Given these facts and

6    the legal precedence cited by plaintiffs, I am concerned

7    whether there is a good-faith basis here for a motion to

8    dismiss.

9          So, Mr. Kessler, I'll hear from you as to why you

10   believe there is a good motion here.

11          MR. KESSLER:  Thank you, your Honor.

12          First, your Honor, let me say that the allegations of

13   the complaint here are somewhat different than your Honor may

14   have the impression from reading their letter, which is really

15   not quite what their complaint states.

16          What the complaint alleges is that there is a claim to

17   decertify the union, but that no, they don't allege there has

18   been any decision made to decertify the union, that any action

19   has been taken to decertify the union, that any steps have been

20   taken to decertify the union.  Quite to the contrary, we have

21   had a collective bargaining session today and we have

22   complaints pending before the NLRB invoking the rights as a

23   union.  As their complaint argues, under the case law that has

24   developed, it is the league's position that if the union is

25   still in place, there can be no antitrust claim.  That is their

197JHAWC                    Teleconference

1   position.

2          And that did not exist previously, prior to the

3   decision of Brown versus Pro Football or the decision in this

4   circuit.  Based on that position, they are forced to allege

5   that if the union decides to disclaim collective bargaining in

6   the future and if it then supports an antitrust action, that

7   such a future disclaimer would be in bad faith and not capable

8   of ending the labor exemption to the antitrust laws.

9          Those are all entirely hypothetical facts, and I am

10  quite confident that if your Honor gives us a chance to brief

11  this issue, we can demonstrate on both prevailing Supreme Court

12  law in Penamou and the Southern District case, North American

13  Airlines versus Brotherhood of Teamsters, 2005 WestLaw 646350,

14  decided in 2005, that we did not cite in our letter, that there

15  can be no case or controversy.  And as your Honor, of course,

16  knows, jurisdiction is the issue here, and your Honor even has

17  the authority to determine facts, to determine the jurisdiction

18  with respect to this motion.  We do, in fact, believe we have a

19  good-faith basis to argue this is completely hypothetical

20  controversy and, second, that I believe your Honor will likely

21  conclude that there is insufficient jurisdiction.

22          I will also note that there are no allegations of

23  threats of litigation that would satisfy the 12 (b) standard of

24  pleading in the complaint.  They do not identify --

25          THE COURT:  The court reporter is having difficulty

SOUTHERN DISTRICT REPORTERS, P.C.              (212) 805-0300

197JHAWC                      Teleconference

1    understanding.  There is some distortion over the phone lines.

2    If you could slow down and try to speak as clearly as you can,

3    that would be helpful.

4            MR. KESSLER:  Thank you, your Honor.  I apologize for

5    that.  The reason the North American Airlines case is quite

6    important is that the court points out it had to do with

7    alleged threats of litigation made during collective

8    bargaining, that most typically such statements during

9    collective bargaining do not give rise to a dispute for a

10   justification based on alleged threats, and the court

11   specifically said, and I am quoting, any time parties are in

12   negotiation, the possibility of lawsuit looms in the

13   background, which holds true of collective bargaining as in any

14   negotiation.

15           Indeed, it is precisely in the circumstances of heated

16   course of bargaining that the courts discount threats to take

17   all appropriate action as typical posturing and not the type of

18   threat that creates an Article III case or controversy.

19           Your Honor, we are quite confident that the record

20   here, whether facially on their allegations or, if necessary,

21   based on declarations which we would be prepared to put in,

22   that there have been no decisions made to file any antitrust

23   lawsuits, that there have been no decisions made to end our

24   status as a union which would be a necessary prerequisite

25   according to the NBA for us to file such a lawsuit.  That

1    without those decisions and steps, this is a hypothetical

2    controversy, which may or may not ever take place.

3              I also note, your Honor, what the record will show is

4    that for the past history of the NBA, over 40 years of

5    bargaining, the NBA Players Association has never disclaimed

6    its role as a collective bargaining representative, unlike the

7    National Football League Players Association, one of my other

8    clients, who they point out that even though the authorizations

9    were collected to possibly disclaim bargaining twice before in

10   the history of the NBA, they were never exercised.

11             THE COURT:  Let, let me, let me, let me break in for a

12   second if I could.  I have a question for you.

13             MR. KESSLER:  Sure.

14             THE COURT:  Paragraph 38 of the complaint states as

15   follows:  In the weeks and months leading up to the expiration

16   of the collective bargaining agreement and continuing to date,

17   the NBPA has made clear it intended to pursue a course of

18   action fully consistent with its prior conduct of:

19             A.   Threatening and seeking to effectuate a purported

20   disclaimer of its role as the players' exclusive collective

21   bargaining representative;

22             B.   Threatening and filing antitrust litigation

23   directed and financed by the NBPA and its lawyers.

24             So my question to you is:  Are you telling me now that

25   there are no threats of antitrust litigation that have been

197JHAWC                    Teleconference

1  made in the course of the negotiations regarding the collective

2  bargaining agreement?

3           MR. KESSLER:  What I am saying to your Honor is that

4  if the factual record were developed on this issue, there would

5  not be an adequate basis for there to be a case or controversy.

6  There have been discussions, as there are in any lengthy

7  negotiations, of the different legal options available to the

8  parties.  That is far different from what the court, including

9  the Supreme Court of the United States and the Second Circuit

10  and the Southern District of New York, have held to be required

11  in order to invoke the processes of this Court.  This is

12  exactly the type of invocation of an advisory opinion.

13           THE COURT:  Let me break in again because I want to

14  make sure I understand your position on this point, so I am

15  going to ask the question again.

16           MR. KESSLER:  Yes.

17           THE COURT:  Is it your position that antitrust

18  litigation was not threatened by your clients in the course of

19  the negotiations regarding the collective bargaining agreement?

20           Is that your position?

21           MR. KESSLER:  It is my position that my clients never

22  expressed an intention that antitrust litigation will, in fact,

23  be filed.  There have been discussions during collective

24  bargaining in which it was discussed what the different weapons

25  and options were that are available, as is always discussed in

197JHAWC                    Teleconference

1   collective bargaining, and I am quite confident that is an

2   insufficient basis.

3          For example, back in the last time that there was a

4   lockout in the NBA, there were discussions that antitrust

5   litigation could be filed in connection with that lockout.  It

6   never happened.  Back in 1987, the history will show, there

7   were authorizations discussed about the possibility of ending

8   the union.

9          In fact, there were lots of discussions about that,

10  and it never happened.  What there hasn't been is a specific

11  threat.  It was mentioned as alternatives, just as they have

12  told us what their various alternative options are.  At

13  different times we have had similar discussions with them about

14  alternatives available to the union.  That does not create a

15  case or controversy under the prevailing case law.  It is an

16  option, not a threat.

17          THE COURT:  Mr. Mishkin, I'll hear from you.

18          MR. MISHKIN:  Thank you, your Honor.

19          I find it hard to believe what Mr. Kessler is saying

20  unless we are much more quibbling about the meaning of the

21  word, "threat."  Threats can be communicated very clearly and

22  yet very politely.  There is just no question here, and again

23  we are on a motion to dismiss, so the well-pleaded allegations

24  of the complaint -- and I hope they're well pleaded -- are very

25  clear that we have been told repeatedly that if they don't like

197JHAWC                    Teleconference

1    the way it is going at the bargaining table, they will bring an

2    antitrust suit, they will disclaim their union and bring their

3    antitrust suit.  It has been said to us over and over and over

4    again.

5              Your Honor has laid out the law here as clearly as we

6    thought we did in the letter.  We have as current an important

7    legal controversy going on right now.  We have already locked

8    them out.  They say that lockout is unlawful at any moment that

9    they choose, which they can choose at any moment to keep that

10   sword of Damoclese up there, and when they do that, they claim

11   it is a per se violation of the antitrust laws.  We say that

12   our lockout is not, right now it is not a violation of the

13   antitrust laws whether or not they ever disclaim.

14             We have five claims in this complaint, not the one

15   that Mr. Kessler is talking about, and a number of them say

16   whether or not they ever disclaim, we are not committing an

17   antitrust violation by locking them out, and they have

18   threatened to sue over that.

19             It seems to me we have every element you would have

20   for a classic case or controversy.  It is very important.  It

21   is having effect on the negotiations now and it certainly is

22   within the subject matter jurisdiction of this Court to issue

23   the declarations we have requested.

24             THE COURT:  All right.  Mr. Kessler, what I am going

25   to ask you to do is think about what I've had to say, take

197JHAWC                    Teleconference

1  another look at the cases you have cited to me, think about it,

2  send me a letter on Monday telling me what you wish to do with

3  respect to a motion to dismiss.  If your decision is you want

4  to proceed with the motion to dismiss, have a conversation with

5  Mr. Mishkin about what an appropriate schedule would be, and

6  you can put that in the letter as well.

7        Now, let me ask this, Mr. Mishkin:  In the event that

8  Mr. Kessler decides to proceed with a motion to dismiss, what

9  is your position as to discovery while the motion to dismiss is

10  being briefed?

11        MR. MISHKIN:  Discovery on the question of subject

12  matter jurisdiction or more broadly?

13        THE COURT:  Well, we can take it separately.  We

14  probably should discuss what discovery would be necessary if

15  the parties believe that discovery is necessary on the question

16  of subject matter jurisdiction.  That is one issue.

17        MR. MISHKIN:  I would not think so based on the

18  allegations of the complaint and my belief there really is no

19  serious basis to question the allegations necessary for subject

20  matter jurisdiction.

21        If Mr. Kessler's motion papers suggest some real

22  factual dispute, your Honor, at that point I might ask you, you

23  know, that we might need a little discovery to test that.  As I

24  sit here right now, I believe the motion, if he makes it, to

25  dismiss can be decided on the face of this complaint.  So I

197JHAWC                    Teleconference

1    wouldn't at this moment, not seeing his papers, anticipate any

2    need for discovery on the motion to dismiss on case or

3    controversy grounds.

4            The other basis, there is at least one cause of action

5    here, perhaps more, on which I would probably want to move for

6    partial summary judgment.  The first one certainly that

7    regardless of whether they ever disclaim or don't disclaim,

8    Section 20 of the Clayton Act has already said, by the Second

9    Circuit, exempts lockout, a lockout from antitrust

10   condemnation.  I would think that that legal issue ought to be,

11   you know, teed-up very early and dealt with, and that doesn't

12   require any discovery.

13            I don't know your Honor's practice, whether you would

14   want us to, if such a motion were pending, to proceed with

15   discovery on other claims.  It might.  There certainly are

16   claims here that would require discovery.  We have a separate

17   antitrust claim, I think it is our third claim, in which we say

18   that even putting aside a Section 20 exemption or nonstatutory

19   labor exemption, a lockout, because of its nature and its

20   purpose, is not, is not a violation of the rule of reason.

21            That would, of course, that would require some

22   discovery.  I confess I have not really thought that all the

23   way through yet as to how much, but some period of discovery,

24   if we are trying that claim, yes, we would need discovery.

25            THE COURT:  Mr. Kessler, what is your view as to

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

197JHAWC                        Teleconference

1   whether discovery is necessary on the motion to dismiss that

2   you've proposed?

3            MR. KESSLER:  We are not seeking any discovery with

4   respect to the motion to dismiss.  And subject matter

5   jurisdiction, we feel we have a very strong basis to do this.

6   I will, of course, give careful consideration to your Honor's

7   comments, but preliminarily we do believe we're likely to want

8   to seek to pursue this motion and we believe your Honor will

9   conclude that it is proper.  We are not seeking any discovery

10  in support of that motion.

11           THE COURT:  So in the letter that Mr. Kessler will

12  send to me, if the decision is to proceed with the motion, he

13  will propose a schedule that he has discussed with Mr. Mishkin,

14  and then the letter should also go on to say what the parties'

15  positions are with respect to whether there should be discovery

16  as to the other claims in the case going beyond the issue of

17  subject matter jurisdiction while the motion to dismiss is

18  being briefed and is pending.

19           MR. KESSLER:  We'll discuss that with Mr. Mishkin,

20  your Honor.  Of course, I will say to him preliminarily, if we

21  are right about there being no jurisdiction, it would be

22  inappropriate to proceed with discovery.  I think it is a

23  threshold issue.  So in general, we think the other claims

24  should proceed until it is determined this Court has the power

25  to adjudicate any of those claims.

197JHAWC                    Teleconference

1          THE COURT:  Right, and I am not surprised to hear that

2     that is your position.  It is my position, generally speaking,

3     that if I have doubts about the merits of a motion to dismiss,

4     I am not going to allow it to hold up the entire case.  It may

5     be that you will cite other authorities to me in your letter

6     that will be more persuasive to me on the issue of whether

7     you're right about the absence of an actual case or

8     controversy, but if you don't do that, and I continue to be of

9     the mind that motion to dismiss is likely to fail, I am going

10    to be reluctant to have the case stall until the briefing is

11    completed and a decision is rendered.  So think about that and

12    address that, if you would, in the letter that you send on

13    Monday.

14         MR. KESSLER:  Thank your Honor.

15         THE COURT:  Is there anything else that anyone else

16    wants to say?

17         MR. MISHKIN:  No, not at the moment, your Honor.

18    Thank you very much.

19         THE COURT:  All right.  I will look for the letter

20    sometime on Monday.  Thank you both.

21         (Court adjourned)

22

23

24

25