UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- x

NATIONAL BASKETBALL ASSOCIATION, et al.,  :
                                          :
                          Plaintiffs,     :    ECF Case
                                          :
            vs.                           :    Civil Action No.
                                          :    11-CV-5369 (PGG) (KNF)
NATIONAL BASKETBALL PLAYERS ASSOCIATION,  :
et al.,                                   :
                          Defendants.     :
                                          :
--------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 649-9361

**STEPTOE & JOHNSON LLP**
750 Seventh Avenue, Suite 1800
New York, New York 10019
Telephone: (212) 506-3900
Facsimile: (212) 506-3950

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................... i

TABLE OF AUTHORITIES ............................................................. ii

PRELIMINARY STATEMENT ......................................................1

BACKGROUND ..............................................................................2

ARGUMENT ....................................................................................5

I.      EVEN ASSUMING THE NBA'S ALLEGATIONS TO BE TRUE, A RIPE CONTROVERSY HAS NOT BEEN ALLEGED AS A MATTER OF LAW ...................................................................6

        A.     Alleged Litigation Threats In The Context Of Collective Bargaining Do Not State A Ripe Case Or Controversy As A Matter Of Law ...........................................................................9

        B.     The Complaint Should Be Dismissed On Its Face For The Additional Reason That It Seeks An Unconstitutional Advisory Opinion About Hypothetical Facts ......................................15

II.    THE COMPLAINT SUFFERS FROM ADDITIONAL PLEADING DEFECTS WHICH REQUIRE DISMISSAL .................................17

III.   EVEN IF THE COURT DOES NOT DISMISS THE COMPLAINT ON ITS FACE, DEFENDANTS' EVIDENCE DEMONSTRATES THAT THE NBA CANNOT MEET ITS BURDEN TO ESTABLISH SUBJECT MATTER JURISDICTION AS A MATTER OF FACT .....................................................................21

IV.   THE NBA'S COMPLAINT IS CLEARLY MOTIVATED BY IMPROPER FORUM SHOPPING, ANOTHER FACTOR FAVORING DISMISSAL .............................................................23

CONCLUSION ..............................................................................25

i

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*Aetna Life Ins. v. Haworth*,
   300 U.S. 227 (1937)...................................................................................................6

*Arbitron, Inc. v. Kiefl*,
   No. 09-cv-04013 (PAC), 2010 WL 3239414 (S.D.N.Y. Aug. 13,
   2010) ........................................................................................................................5

*Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*,
   No. 07 CV 9694(LAP), 2009 WL 1110783 (S.D.N.Y. Apr. 21, 2009)......................6

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)...................................................................................2, 17, 18

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of
   Carpenters*,
   459 U.S. 519 (1983)............................................................................................ 20-21

*Atlas Air, Inc.* v. *Air Line Pilots Ass'n*,
   232 F.3d 218 (D.C. Cir. 2000) ........................................................................ 9, 10-11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................2, 17

*Brady v. Nat'l Football League*,
   Civ. No. 11-639, 2011 WL 1535240 (D. Minn. April 25, 2011)..................................4

*Bridgeman v. Nat'l Basketball Ass'n*,
   675 F. Supp. 960 (D.N.J. 1987) ................................................................................4

*Brown v. Pro Football, Inc.*,
   518 U.S. 231 (1996).................................................................................................16

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
   508 U.S. 83 (1993)....................................................................................................5

*Carlin Equities Corp. v. Offman*,
   No. 07 Civ. 359, 2007 WL 2388909 (S.D.N.Y. Aug. 21, 2007) ...............................13

*Cosa Instrument Corp. v. Hobre Instruments BV*,
   698 F. Supp. 2d 345 (E.D.N.Y. 2010) .....................................................................13

*Dana Corp. v. Colfax Corp.*,
   No. 03 Civ. 7288(DC), 2004 WL 503742 (S.D.N.Y. Mar. 12, 2004) ..........................7

*Dow Jones & Co. v. Harrods, Ltd.*,
  237 F. Supp. 2d 394 (S.D.N.Y. 2002)............................................................5, 15, 21

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
  241 F.3d 154 (2d Cir. 2001)..................................................................................5

*Factors Etc., Inc. v. Pro Arts, Inc.*,
  579 F.2d 215 (2d Cir. 1978)............................................................................8, 23

*Fed. Express Corp. v. Air Line Pilots Ass'n*,
  67 F.3d 961 (D.C. Cir. 1995)......................................................................9, 11, 13

*Filetech S.A. v. Fr. Telecom S.A.*,
  157 F.3d 922 (2d Cir. 1998)................................................................................21

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.*,
  735 F. Supp. 581 (S.D.N.Y. 1990)....................................................................8, 23

*Jenkins v. United States*,
  386 F.3d 415 (2d. Cir. 2004)..............................................................................15

*Juniper Networks, Inc. v. Shipley*,
  No. 2010-1327, 2010 WL 3591783 (Fed. Cir. Sept. 10, 2010) ...................................7

*Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*,
  925 F.2d 556 (2d Cir. 1991)................................................................................13

*Marvel Worldwide, Inc. v. Kirby*,
  756 F. Supp. 2d 461 (S.D.N.Y. 2010)......................................................................6

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
  312 U.S. 270 (1941) ................................................................................... *passim*

*McNeil v. Nat'l Football League*,
  764 F. Supp. 1351 (D. Minn. 1991)........................................................................4

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)................................................................................... *passim*

*N. Am. Airlines Inc. v. Int'l Bhd. of Teamsters*,
  No. 04 Civ. 9949(KMK), 2005 WL 646350 (S.D.N.Y. Mar. 21,
  2005) ..........................................................................................................9, 10

*Nat'l Hockey League v. Nat'l Hockey League Players Ass'n*,
  789 F. Supp. 288 (D. Minn. 1992) ("*NHL v. NHLPA*") ..................................... *passim*

*Perez v. Ledesma*,
  401 U.S. 82 (1971)..........................................................................................12, 19

*Pirone v. MacMillan, Inc.*,
  894 F.2d 579 (2d Cir. 1990)..................................................................8

*Public Serv. Comm'n v. Wycoff Co.*,
  344 U.S. 237 (1952)..........................................................................5

*RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*,
  No. 10 Civ. 25 (PGG), 2011 WL 3251554 (S.D.N.Y. July 28, 2011).........................8

*Texas v. United States*,
  523 U.S. 296 (1998)..................................................................8, 15, 17

*Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United*
  *Auto., Aerospace and Agric. Implement Workers of Am.*,
  523 U.S. 653 (1998)..........................................................................5

*United States v. Santana*,
  761 F. Supp. 2d 131 (S.D.N.Y. 2011).............................................7, 8, 15

*Wood ex rel. United States v. Applied Research Assocs., Inc.*,
  328 F. App'x 744 (2d Cir. 2009) .......................................................17-18

**FEDERAL STATUTES**

28 U.S.C. § 2201-2202 ..................................................................*passim*

29 U.S.C. § 151 *et seq.*......................................................................3

U.S. CONST. ART. III, §2 ..................................................................*passim*

**RULES**

FED. R. CIV. P. 12(b)(1) ......................................................................5

**OTHER AUTHORITIES**

10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE
  AND PROCEDURE (3d ed. 2011) ...........................................................7, 23

17 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE (3d ed.
  2011) .......................................................................................24

*About the NBPA*, NBPA.org, http://www.nbpa.org/about-us (last visited
  August 19, 2011)............................................................................3

Ken Berger, *Both Sides of NBA Labor Negotiations Prepare for Legal*
  *War*, CBSSports.com (July 29, 2011),
  http://www.cbssports.com/nba/story/15372422/both-sides-of-nba-
  labor-negotiations-ready-themselves-for-legal-war/rss ...........................3, 19

Mark Shapiro, *Ewing to Head NBA Players Union*,
   Chicago Tribune (Sept. 16, 1997)................................................................................19

*Preparation to Infringe After MedImmune v. Genentech: Why the
   Federal Circuit's Declaratory Judgment Jurisdiction Test is Still
   Too Stringent*,
   11 Minn. J.L. Sci. & Tech. 405 (2010) ........................................................................7

*Some NBA Agents are Making a Big Push for Decertification* (Oct. 21,
   1998), http://articles.latimes.com/1998/oct/21/sports/sp-34792..................................20

## PRELIMINARY STATEMENT

Defendant National Basketball Players Association ("NBPA"), the collective bargaining representative of NBA basketball players, and individual defendants Derek Fisher, Keyon Dooling, James Jones, Matt Bonner, Maurice Evans, Roger Mason, Jr., Chris Paul, Theo Ratliff, Etan Thomas, Amar'e Stoudemire, Mike Dunleavy, James Fredette and Charles Jenkins, respectfully move to dismiss for lack of subject matter jurisdiction the Class Action Complaint for Declaratory Relief ("Complaint") filed by the National Basketball Association and its member teams (collectively, "NBA," the "League," or "plaintiffs").

The NBA's Complaint alleges that the NBPA, in the context of collective bargaining, has threatened imminent disclaimer of its role as the collective bargaining representative of NBA players so that individual players can then challenge the NBA's lockout as unlawful under the antitrust laws.  *See* Compl. ¶¶ 1, 44.  Based on these conclusory (and false) allegations, the NBA asks the Court to issue a series of declarations along the lines of, *if* the NBPA ever disclaims, it would not be an effective disclaimer, and *if* some unidentified NBA players filed an antitrust case against the NBA, then the hypothetical defendants in that hypothetical litigation would be protected by the labor exemption to the antitrust laws.  Such theoretical, unsubstantiated allegations of a future antitrust dispute do not satisfy the NBA's burden to establish a case or controversy of sufficient immediacy and reality to support the Court's subject matter jurisdiction.

For at least three sets of reasons, defendants respectfully submit that the Court does not have Article III jurisdiction over the NBA's not so thinly veiled effort to seek an advisory opinion and to forum shop in the event the parties someday do have an

actual antitrust controversy.  First, the case law establishes that the NBA's allegations of litigation "threats" made during collective bargaining, even if assumed to be true, are legally insufficient to establish a justiciable dispute.  Second, additional defects on the face of the Complaint – *e.g.,* the absence of allegations that *any* named player-defendant will imminently file suit against the League, the NBA's failure to plead sufficient *facts,* per the U.S. Supreme Court's decisions in *Twombly* and *Iqbal*, that any NBPA representative has made "threats" of "imminent" litigation, and the NBPA's undisputed lack of antitrust standing – also require that the Complaint be dismissed for lack of subject matter jurisdiction.  And third, even if the Court does not dismiss the Complaint on its face, the evidence defendants submit in support of this motion demonstrates that the NBA's allegations of threats of "imminent" disclaimer and antitrust litigation leading up to and following the expiration of the CBA are false.  As a consequence, the NBA cannot satisfy its burden to establish, as a factual matter, a real and imminent antitrust controversy that is constitutionally ripe for adjudication.  Absent a finding that the NBA has failed to plead subject matter jurisdiction as a matter of law, the Court must determine that the NBA has met its burden to establish jurisdiction as a matter of fact before proceeding to any merits issues in the case.

## BACKGROUND

For more than two years, the NBPA and NBA have been bargaining over the terms of a new labor contract, and their most recent CBA expired on June 30, 2011. *See* Compl. ¶ 37.

On May 24, 2011, prior to the CBA's expiration, the NBPA filed with the National Labor Relations Board ("NLRB") an unfair labor charge against the NBA

alleging, among other things, that the NBA had engaged in bad-faith bargaining in violation of its obligations under the National Labor Relations Act, 29 U.S.C. Sec. 151 *et seq.* ("NLRA" or "the Act").  *See id.*  The charge, as later amended, alleges, in part, that the NBA chose to forsake good faith labor negotiations in favor of threatening, and then imposing, a pre-impasse lockout that is unlawful under federal labor law.  *See* Exs. A, B and C to the Declaration of David L. Greenspan ("Greenspan Decl.") (filed concurrently herewith).  The NBA and the NBPA have nevertheless continued to collectively bargain with in-person meetings held during August and September 2011.

On August 2, 2011, the NBA filed this declaratory judgment action alleging that, in connection with collective bargaining in "the weeks and months leading up to the expiration of the CBA, and continuing to date," the NBPA purportedly has "threatened" to "imminently" disclaim interest in further union representation of NBA players and that some unidentified NBA players, directed and financed by the NBPA, will then file antitrust litigation challenging the NBA lockout.  Compl. ¶¶ 38, 44.  The NBA predicts that this entirely theoretical antitrust suit will be settled by the execution of a new CBA with a "resurrected" NBPA union.  *Id.*

But, despite its longstanding legal option to do so, the NBPA (established as the union for NBA players in 1954)[1] has never in its history disclaimed its position as the collective bargaining representative for NBA players.  *See*, *e.g.*, Ken Berger, *Both Sides of NBA Labor Negotiations Prepare for Legal* War, CBSSports.com (July 29, 2011),  http://www.cbssports.com/nba/story/ 15372422/both-sides-of-nba-labor-

---

[1]  *See About the NBPA*, NBPA.org, http://www.nbpa.org/about-us (last visited September 14, 2011).

negations-ready-themselves-for-legal-war/rss.[2]   Further, it has been more than twenty years since the NBPA supported antitrust litigation against the NBA, while the NBPA was still a union.  *See Bridgeman v. Nat'l Basketball Ass'n*, 675 F. Supp. 960 (D.N.J. 1987).   And, ever since this lawsuit was filed and at present, the NBPA remains the collective bargaining representative for NBA players, it continues to collectively bargain with the NBA, and there has been no change to that union status and no commencement of antitrust litigation by NBA players despite the fact that the NBA imposed its lockout over two months ago.  The NBA does not and cannot claim otherwise.

The thrust of the NBA's Complaint is that the allegedly "imminent" disclaimer of union representation rights and commencement of antitrust litigation – no matter whether, how, by whom or when it ever occurs – would "not be a good faith, permanent relinquishment of the right to [collectively] bargain," would "not be effective as a matter of federal labor law," and would have "no effect on the continuing application and validity of the non-statutory labor exemption" enjoyed by the NBA teams.  Compl. ¶¶ 9, 44.  Plaintiffs seek judicial declarations concerning all of these speculative events

---

[2]  Notably, disclaimer is not a small undertaking that happens without adverse consequences to employees.  As the District Court for the District of Minnesota has explained on two occasions, the "price" of disclaimer is that (i) the players cease to be represented in collective bargaining, (ii) the players lose their right to institute NLRB proceedings for the employer's failure to bargain in good faith, (iii) the former union must abandon its role in new grievance arbitrations, (iv) the former union must cease regulating agents, (v) the players may be subject to management unilaterally changing insurance benefits and other terms and conditions of employment, and (vi) the players may even lose their right to strike without being susceptible to antitrust attack.  *See McNeil v. Nat'l Football League*, 764 F. Supp. 1351, 1358-59 (D. Minn. 1991); *Brady v. Nat'l Football League*, Civ. No. 11-639 (SRN/JJG), 2011 WL 1535240, at *17 (D. Minn. April 25, 2011) (explaining the "very significant rights" given up by players who de-unionize).

even though the Court has no basis (or jurisdiction) to determine such issues that depend on hypothetical facts which might never occur.

## ARGUMENT

The NBA, as the declaratory judgment plaintiff, bears the burden of establishing that an "actual controversy," ripe for judicial review and giving rise to subject matter jurisdiction, exists. *See E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001) (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 95 (1993)); *Arbitron, Inc. v. Kiefl*, No. 09-cv-04013 (PAC), 2010 WL 3239414, at *3 (S.D.N.Y. Aug. 13, 2010) ("Under the Declaratory Judgment Act, the party seeking a declaratory judgment must demonstrate that subject matter jurisdiction exists."). The question is whether a justiciable dispute existed at the time the complaint was filed. *See Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace and Agric. Implement Workers of Am.,* 523 U.S. 653, 660 (1998).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a complaint must be dismissed if plaintiffs fail to establish "either the facial sufficiency of the pleadings in the complaint or the existence of subject matter jurisdiction in fact." *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 404 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003). Here, the Complaint fails *both* the facial *and* the factual tests, although defendants submit that the Court does not need to reach the factual issues in order to dismiss the Complaint for failing to even *allege* facts that are legally sufficient to establish an antitrust dispute immediate and real enough for judicial review.

I.     **EVEN ASSUMING THE NBA'S ALLEGATIONS TO BE TRUE, A RIPE CONTROVERSY HAS NOT BEEN ALLEGED AS A MATTER OF LAW**

The Court lacks subject matter jurisdiction under Article III of the U.S. Constitution and the Declaratory Judgment Act because, facially, the Complaint fails to allege the facts necessary to establish a "case of actual controversy" that is ripe for review.  28 U.S.C. § 2201(a); *Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 467 (S.D.N.Y. 2010) (a declaratory judgment action is proper only if there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality") (citation omitted); *Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*, No. 07 CV 9694(LAP), 2009 WL 1110783, at *3 (S.D.N.Y. Apr. 21, 2009) (a case must be ripe for the court to have subject matter jurisdiction).

The Supreme Court's "decisions have required that the dispute be '*definite and concrete*, touching the legal relations of parties having adverse legal interests'; and that it be '*real and substantial*' and 'admit[] of specific relief through a decree of a conclusive character, *as distinguished from an opinion advising what the law would be upon a hypothetical state of facts*."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 240-41 (1937)) (emphases added).  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests of sufficient *immediacy and reality* to warrant the issuance of a declaratory judgment."  *Id.* (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)) (emphasis added).[3]

---

[3] The Supreme Court's decision in *MedImmune* did not, as the NBA contends in its Pre-Motion Conference Letter (August 9, 2011), render obsolete all earlier decided

Thus, a case is not ripe, and must be dismissed for lack of subject matter jurisdiction, where the challenged events – here, a theoretical union disclaimer of representation rights followed by antitrust litigation – are entirely speculative and "may not occur as anticipated," or may never "occur at all." *United States v. Santana*, 761 F. Supp. 2d 131, 138 (S.D.N.Y. 2011) (citation omitted); *Dana Corp. v. Colfax Corp.*, No. 03 Civ. 7288(DC), 2004 WL 503742, at *3 (S.D.N.Y. Mar. 12, 2004) (courts are precluded from issuing an "opinion advising what the law would be upon a hypothetical state of facts") (internal citations omitted).  Under such circumstances, where a complaint is based on contingent future events – which could unfold in an infinite number of ways, or not at all – plaintiffs cannot meet their burden to prove that the alleged controversy is ripe for adjudication.  *See Santana*, 761 F. Supp. 2d at 138; 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2757 (3d ed. 2011) ("A court should not express legal opinions on academic theoreticals which might never come to pass.") (citing authority).

Further, even where a complaint does allege an "actual controversy" under Article III and the Declaratory Judgment Act (the NBA Complaint does not), district courts nevertheless possess broad discretion *not* to adjudicate declaratory judgment

declaratory judgment cases.  Instead, *MedImmune* merely rejected as inconsistent with previous Supreme Court precedent a test applied by the Federal Circuit in patent litigations.  *See MedImmune*, 549 U.S. at 113 n.11; *see also* Hugh D. Brown, *Preparation to Infringe After MedImmune v. Genentech: Why the Federal Circuit's Declaratory Judgment Jurisdiction Test is Still Too Stringent*, 11 Minn. J.L. Sci. & Tech. 405, 412 (2010) ("[T]he most important part of the *MedImmune* opinion came in a footnote, which explained that the Federal Circuit's reasonable apprehension of suit test was inconsistent with a previous Supreme Court case.").  The "all circumstances" declaratory judgment standard affirmed in *MedImmune* – and relied on by the NBA in its Pre-Motion Conference letter – is the same test articulated seventy years ago in *Maryland Casualty*. *See* Point I.A, *infra*.

actions for prudential reasons.  *See MedImmune*, 549 U.S. at 136 (the Act "has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants") (internal citations and quotations omitted).  For example, district courts regularly exercise their discretion not to hear disputes that would "later turn out to be unnecessary or may require premature examination of" issues that "time may make easier or less controversial."  *Santana*, 761 F. Supp. 2d at 138-39; *see also Texas v. United States*, 523 U.S. 296, 300-302 (1998).

In addition, courts will decline to adjudicate preemptive declaratory actions (like this one) principally motivated by a desire to wrest the choice of forum from the would-be plaintiff.  *See, e.g.*, *Perez v. Ledesma,* 401 U.S. 82, 119 n.12 (1971) ("The federal declaratory judgment is not a prize to the winner of a race to the courthouses . . . "); *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 219 (2d Cir. 1978) (declining to exercise jurisdiction over declaratory judgment action motivated by forum shopping), *abrogated on other grounds by*, *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 585-86 (2d Cir. 1990).[4]

---

[4] The NBA erroneously construes the law by arguing that so long as a declaratory judgment would be "useful" then the Court may exercise jurisdiction to hear the dispute. Pre-Motion Conference Ltr. at 2 (citing *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581 (S.D.N.Y. 1990) and *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.,* No. 10 Civ. 25(PGG), 2011 WL 3251554 (S.D.N.Y. July 28, 2011)).  The "useful purpose" test is used by courts in deciding whether to exercise their discretion to adjudicate an action that is constitutionally ripe – it does not supplant the constitutional requirement of an "actual controversy" or the Supreme Court's prohibition of advisory opinions based on hypothetical facts.  *Great Am.*, 735 F. Supp. at 584.  In *Great American*, the court *dismissed* the declaratory judgment action in part because the plaintiff was motivated to "gain a procedural advantage and preempt the forum choice . . . ."  *Id.* at 586.  And, in *RJ Capital,* this Court addressed only the *prudential* question of whether a declaratory judgment would be "useful"; it does not appear that *constitutional* ripeness was an issue.

Nor can the NBA meet these jurisdictional requirements by alleging repeated "threats" of litigation in the context of collective bargaining. *See, e.g.*, Compl. ¶ 38. As discussed in Point I.A, *infra*, while specific threats of imminent litigation may create a justiciable dispute in certain circumstances, the case law is clear that federal courts applying justiciability requirements to alleged threats of litigation in the unique context of collective bargaining have held that such threats do not give rise to a justiciable claim.  Moreover, the litigation "threats" alleged by the NBA here are especially insufficient because, among other things, the NBA alleges that the threatened antitrust litigation would occur only *if* the NBPA *first* disclaims, but alleges *no facts* about when or under what circumstances such a disclaimer might ever occur.

### A.  Alleged Litigation Threats In The Context Of Collective Bargaining Do Not State a Ripe Case or Controversy As A Matter of Law

Even if assumed to be true, the allegations in the Complaint that the NBPA defendants have made litigation "threats" during collective bargaining are facially insufficient to establish a justiciable controversy.  Specifically, the case law makes clear that courts apply a different analysis when considering the justiciability of allegedly threatened litigation in the context of collective bargaining where the discussion of possible litigation is a routine part of the negotiation process and rarely results in litigation. *See N. Am. Airlines Inc. v. Int'l Bhd. of Teamsters*, No. 04 Civ. 9949(KMK), 2005 WL 646350, at *13-14 (S.D.N.Y. Mar. 21, 2005); *see also Atlas Air, Inc. v. Air Line Pilots Ass'n*, 232 F.3d 218, 227 (D.C. Cir. 2000); *Fed. Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 964-965 (D.C. Cir. 1995); *Nat'l Hockey League v. Nat'l Hockey League Players Ass'n*, 789 F. Supp. 288, 295 (D. Minn. 1992) ("*NHL v. NHLPA*"). Indeed, it would be highly disruptive to collective bargaining – including to the ongoing

9

NBA negotiations – to permit declaratory judgment actions to be filed whenever purported litigation "threats" are discussed.

In *North American Airlines, Inc. v. International Brotherhood of Teamsters*, 2005 WL 646350, this District dismissed an employer's declaratory judgment action alleging that a union had made various litigation "threats" during collective bargaining, including that it "looked forward to an early opportunity to bring" a case in New York against the employer and "would take action to block" the employer's unilateral changes to certain terms of employment.  Although the union "vehemently" denied making such litigation threats, the court held that it was "unnecessary" to resolve the parties' factual dispute and dismissed the complaint for lack of subject matter jurisdiction.  *Id.* at *7, 13 n.17.  The court explained that, even if taken as true for the purposes of the motion, the employer's allegations of threatened legal action "must be viewed in the context of collective bargaining, which is a robust and dynamic negotiation process where leverage is sought through posturing," and thus cannot establish ripeness:

> Any time parties are in negotiation . . . the possibility of lawsuit looms in the background.  This holds true in collective bargaining as in any negotiation.  *Indeed, it is precisely in the circumstance of heated collective bargaining that the courts discount threats to take "all appropriate action" as typical posturing and not the type of threat that creates an Article III case or controversy, even in a declaratory judgment action.*

*Id.* at *13-14 (emphasis added).

The U.S. Court of Appeals for the D.C. Circuit has twice reached the same conclusion.  In *Atlas Air, Inc. v. Airline Pilots Association*, 232 F.3d 218, it affirmed the dismissal of a declaratory judgment claim against a union that had made "threats" against an employer as part of labor negotiations. Specifically, the court held:  "That a union

may posture in labor negotiations or otherwise threaten to respond to future changes is insufficient" to establish ripeness. *Id.* at 227.

Similarly, in *Federal Express Corp. v. Air Line Pilots Association*, 67 F.3d 961, a union threatened as part of collective bargaining to "take all appropriate action" in response to any unilateral future changes by the employer.  The Court of Appeals affirmed dismissal of the employer's declaratory judgment claim because posturing by a union during collective bargaining is not the kind of "direct threat" of litigation necessary to establish federal jurisdiction.  The court reasoned that "[e]mployers and unions can be expected to take aggressive bargaining positions and freely threaten dire consequences when they are rejected.  We do not believe [the union's] statement that it would 'take all appropriate action,' in the context of the ongoing negotiations, could reasonably be viewed as a direct threat to file a lawsuit in the immediate future.  Other avenues of action, including an even tougher stance at the bargaining table or a work stoppage, were potentially available to [the union]." *Id.* at 964-65.

Further, as discussed in defendants' August 5 and September 12 letters to the Court, under virtually identical circumstances, a district court rejected an attempt by the National Hockey League to forum shop by filing a declaratory judgment action concerning antitrust litigation that was "threatened" by NHL players and their union (the NHLPA) in the course of collective bargaining.  *See NHL v. NHLPA*, 789 F. Supp. at 291.  In *NHL v. NHLPA*, the NHL planned to impose certain rules (*e.g.*, restrictions on "free agency," a player's ability to work for the employer of his choosing) that the NHLPA believed would violate the antitrust laws.  The NHLPA wrote to the NHL that if it imposed such rules, that "plainly would violate the antitrust laws and would subject the

11

league and its [teams] to treble damages." *Id.* at 291.  And, in motion practice before the district court, the NHL stressed the fact that the NHLPA had retained antitrust counsel who was representing NFL players in their antitrust litigation against the NFL.  *See id.* at 291 n.6.  The NHL contended that these facts gave rise to a ripe controversy, and filed a preemptive declaratory judgment action asking the court to declare that implementation of the free agency restrictions "is protected from antitrust challenge under the non-statutory labor exemption." *Id.* at 291-92.  The NBA's foundational allegations and requested declarations are the same here.

The district court held that, to be justiciable, the dispute must be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," and went on to dismiss the NHL's complaint because no such "concrete dispute of sufficient immediacy to provide subject matter jurisdiction" existed.  *NHL v. NHLPA*, 789 F. Supp. at 294-95 (quoting *Maryland Cas.*, 312 U.S. at 273).[5]  The court then expressly rejected the NHL's argument – identical to the one the NBA is making here – that the players' threatened antitrust litigation in the context of ongoing collective bargaining was sufficient to render the dispute justiciable:

> The facts asserted by plaintiffs as a predicate for this action are nothing more than typical collective bargaining posturing.  It is certainly no secret to these parties, to this Court, or to the average eight-year-old sports fan that antitrust issues exist in professional sports.

*Id.* at 295.

---

[5] Because the district court first held that the complaint must be dismissed against the NHLPA, recognizing that the union would have lacked antitrust standing to sue the NHL (*see,* Point II, *infra*), the court addressed ripeness only with respect to the individual NHL player defendants.

Significantly, even the *allegations* here present a supposed antitrust controversy that is far more speculative than what was dismissed as non-justiciable in *NHL v. NHLPA*. For starters, the NBA avers that defendants have threatened to file antitrust litigation *only after* the NBPA disclaims its union status. *Compare, e.g.*, Compl. ¶ 38 *with NHL v. NHLPA*, 789 F. Supp. 288 (de-unionization was not an issue). Thus, even crediting the NBA's allegations, antitrust litigation against the NBA would still be one enormous step – de-unionization – removed from the litigation threatened in *NHL v. NHLPA*.

Further, unlike in ripe declaratory judgment actions, the NBA alleges no concrete event that would trigger the purported disclaimer and antitrust litigation, which is another reason why the dispute alleged here is not analogous to the cases cited by the NBA in its Pre-Motion Conference Letter.[6] The NBA does not, for example, allege that defendants have threatened disclaimer and antitrust litigation upon the NBA unilaterally implementing changes to the expired CBA (like in *Federal Express* and *NHL v. NHLPA*), or upon any other specific action by the NBA. To the contrary, the only NBA action mentioned in the Complaint – a NBA lockout ("A purported disclaimer of interest by the

---

[6] *Compare* NBA's Pre-Motion Conference Ltr. at 3, citing *Cosa Instrument Corp. v. Hobre Instruments BV*, 698 F. Supp. 2d 345, 349 (E.D.N.Y. 2010) (plaintiff sought declaratory relief only after receiving cease and desist letters from defendant and its counsel communicating the defendant's intent to bring an infringement suit unless "[the infringer] acknowledges within a reasonable period of ten business days . . . that it will cease the production [of the infringing product]" and requesting that plaintiff issue a litigation hold); *Carlin Equities Corp. v. Offman*, No. 07 Civ. 359(SHS), 2007 WL 2388909, at *1, 3 (S.D.N.Y. Aug. 21, 2007) (declaratory judgment defendant threatened to sue and then *actually sued twice* – once before and once after the declaratory judgment action was filed); *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991) (plaintiff filed declaratory judgment action only after receiving a memorandum from the defendants detailing the claims and defenses that the defendants intended to assert after the expiration of a specific time period).

NBPA and an antitrust challenge to the NBA's exercise of its federal labor law right to lockout NBA players are imminent" (Compl. ¶ 44)) – occurred over two months ago, on July 1, 2011. No disclaimer or antitrust litigation has ensued (and the NBA does not allege otherwise).

While the NBA's Complaint offers an even stronger case for dismissal than in *NHL v. NHLPA*, the NBA nevertheless argues in its Pre-Motion Conference Letter (at 3-4) that *NHL v. NHLPA* carries no weight because (i) it pre-dates the Supreme Court's holding in *MedImmune*, and (ii) "the players in the *NHL* action had foresworn bringing the allegedly threatened antitrust action." The NBA is wrong on both counts. First, the ripeness test that the NBA itself cites as the controlling standard actually originated in the Supreme Court's 1941 decision in *Maryland Casualty*, not in *MedImmune*. *See* NBA's Pre-Motion Conference Ltr. at 2; *MedImmune*, 549 U.S. at 127 (quoting *Maryland Cas.*). And, the *Maryland Casualty* test is what the *NHL v. NHLPA* court expressly applied in dismissing the NHL's declaratory judgment claim as unripe. *See NHL v. NHLPA*, 789 F. Supp. at 294 (citing and quoting *Maryland Cas.*). Second, it is simply not accurate that NHL players "foreswor[e]" antitrust litigation in their efforts to have the declaratory judgment action dismissed. To the contrary, in their memorandum in support of their motion to dismiss, the NHL players expressly *preserved* their right to bring an antitrust suit: "It is, of course, possible that a time may come when an NHL player (or players) will so clearly challenge practices of some or all of the NHL 'plaintiffs' as being violative of the antitrust laws and attempt to seek damages and other relief." Greenspan Decl., Ex. D (Defs.' Mem. in Supp. of Mot. To Dismiss Pursuant to F.R.C.P. 12(b)(1) and (6) at 6, *NHL v. NHLPA*, No. 4-91-636 (D. Minn. Nov.

15, 1991), NHL players' Memorandum in Support of Motion to Dismiss).  The sound reasoning of *NHL v. NHLPA* thus applies with full force here.

        In sum, a finding that the threats of litigation in the context of collective bargaining give rise to justiciable claims would be a stark departure from the case law, inflame (not discourage) litigation in connection with collective bargaining, and disrupt the collective bargaining process in the NBA and elsewhere.

    **B.**    **The Complaint Should Be Dismissed On Its Face For The Additional Reason That It Seeks An Unconstitutional Advisory Opinion About Hypothetical Facts**

        Declaratory judgment actions serve to resolve pure legal questions that "would not benefit from further factual development of the issues presented."  *Santana*, 761 F. Supp. 2d at 139 (citation omitted).  Here, by contrast, the Complaint poses numerous questions of fact that are contingent and thus improper, and in any event impossible for the Court to resolve now.  *See MedImmune*, 549 U.S. at 127 ("an opinion advising what the law would be upon a hypothetical state of facts" is unconstitutional); *Texas*, 523 U.S. at 300 ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal quotations and citations omitted); *Dow Jones*, 237 F. Supp. 2d at 408 (finding no actual controversy and denying declaratory relief where plaintiff's claims were based on "premature concerns about contingencies that may or may not come to pass"); *Jenkins v. United States*, 386 F.3d 415, 417-418 (2d. Cir. 2004) ("The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.") (citing *Public Serv. Comm'n*

*v. Wycoff Co.*, 344 U.S. 237, 243-46 (1952)).  In short, courts do not permit plaintiffs to seek advisory opinions based on speculation and hypotheticals.

The NBA does not allege that a NBPA disclaimer or antitrust litigation has been attempted, much less occurred.  Thus, the NBA's Complaint effectively asks the Court to declare, among other things, that:

- There are *no* facts under which a future disclaimer by the NBPA could be legally effective or permanent;

- There are *no* facts under which a future disclaimer by the NBPA could have an effect on the validity of the lockout or on the application of the non-statutory labor exemption as long as proceedings remain pending before the NLRB; and

- There are *no* facts under which the existing contracts between NBA players and NBA teams would remain enforceable if the NBPA effectively disclaims.[7]

Compl. ¶¶ 9, 12.  The NBA asks the Court to make such declarations even though its own Complaint makes clear that it is uncertain whether de-unionization and antitrust litigation will occur at all, let alone how or when or under what circumstances.

To offer another example, the NBA seeks a declaration based on the Supreme Court's holding in *Brown v. Pro Football, Inc.* that any challenge to the labor exemption to the antitrust laws would be unsuccessful because the challenged conduct is not "sufficiently distant in time and circumstances from the collective-bargaining process."  Compl. ¶ 9 (quoting *Brown*, 518 U.S. 231, 250 (1996)).  But, what if the NBA

---

[7] In its Pre-Conference Motion Letter, the NBA states that it is not seeking a declaration from this Court that there are no facts under which a future disclaimer by the NBPA could be in good faith because that issue will be decided by the NLRB.  *But see* Compl. ¶ 9 (alleging that "the NBPA's threatened disclaimer would not be a good faith, permanent relinquishment of the right to bargain . . . .").  Even crediting the NBA's assertion, it reveals yet another contingency because nobody knows whether or when the NLRB will reach any decision about a disclaimer that has not happened.

players did not commence antitrust litigation challenging the NBA's lockout until six months after the prior collective bargaining agreement ended?  Or what if the NBPA in good faith disclaimed and ended the collective bargaining relationship altogether?  These and countless other factual permutations make it both improper and impossible to adjudicate these issues now.[8]

Justice Scalia's observation in an analogous action – seeking a declaration that a federal statute could never be applied in a particular way – resonates here:  "We do not have sufficient confidence in our powers of imagination to affirm such a negative.  The operation of the statute is better grasped when viewed in light of the particular application."  *Texas*, 523 U.S. at 301 (affirming district court's dismissal of declaratory judgment action as not ripe).  This Court should reach the same conclusion.

## II.     THE COMPLAINT SUFFERS FROM ADDITIONAL PLEADING DEFECTS WHICH REQUIRE DISMISSAL

Whereas the foregoing arguments presume, *arguendo*, the truthfulness of the NBA's complaint allegations, the NBA's jurisdictional allegations of threatened litigation are conclusory and lack the necessary *factual* content to warrant the presumption of truth under governing pleading standards.  *See, e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") (discussing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *Wood ex rel. United States v. Applied*

---

[8] For example, in *Brady v. Nat'l Football League*, the NFL argued that the principal evidence of the players' disclaimer allegedly not being effective or in good faith was statements made by players *after* disclaimer occurred.  *See* Mem. of Law of the NFL and its Member Clubs in Opp'n to Pls.' Mot. for Prelim. Inj. at 7, Civ. No. 11-639 (D. Minn. Mar. 21, 2011), ECF No. 34.  Putting aside that such conduct may have no bearing on the effectiveness of any disclaimer, it is by definition unknown in this case what any post-union conduct of players or their representatives would be.

*Research Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009) (same). This pleading failure thus provides additional grounds for dismissal as the NBA has not adequately pled facts to plausibly establish subject matter jurisdiction.

To begin, there is not a single factual allegation in the NBA's Complaint that any of the named thirteen individual NBA player defendants have threatened to file an antitrust suit challenging the NBA's lockout.  Rather, the Complaint is silent with respect to any purported controversy – actual, imminent or otherwise – with these specific individuals, and the Complaint therefore must be dismissed as to them.  *See NHL v. NHLPA*, 789 F. Supp. at 295 (dismissing Declaratory Judgment action against "putative, individual defendants, who did not volunteer for this role").

With respect to defendant NBPA, the Complaint contains nothing more than conclusory assertions about recent "threats" of a purportedly "imminent" disclaimer and support for antitrust litigation against the NBA.  Compl. ¶ 44.  But, nowhere in the Complaint does the NBA allege *facts* regarding who at the NBPA made the alleged threats, when or where the threats were supposedly made, or even what was said or what specifically made the threats "imminent."   Conclusory allegations of "threats" of "imminent" litigation are not enough.  *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' **. . .** will not do.  Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'") (citation omitted).

Because there are no factual allegations to substantiate the NBA's conclusory assertion of "threats" of disclaimer and antitrust litigation "[i]n the weeks and months leading up to the expiration of the CBA, and continuing to date," the NBA resorts to reliance on the parties' forty-plus year collective bargaining history, claiming that this

history is punctuated by discussions of potential de-unionization and antitrust litigation, and that past is necessarily prologue. *See* Compl. ¶¶ 29-36, 38. Yet, the NBA's own historical allegations prove the point that alleged threats of disclaimer and antitrust litigation do not make disclaimer and antitrust litigation inevitable, much less imminent. *See id.* To the contrary, notwithstanding these allegedly pervasive, historical "threats," the NBPA has *never before* disclaimed its collective bargaining status and has not supported antitrust litigation against the NBA for the past *twenty-four years*. *See* Ken Berger, *Both Sides of NBA Labor Negotiations Prepare for Legal War*, CBSSports.com (July 29, 2011), http://www.cbssports.com/nba/story/15372422/both-sides-of-nba-labor-negotiations-ready-themselves-for-legal-war/rss.

For example, the NBA's Complaint alleges that in 1988 "the player representatives of the NBPA – represented then as they are represented now by attorney Jeffrey L. Kessler – purportedly voted to recommend to the players a decertification of the Union." Compl. ¶ 31. But no such de-unionization ever occurred and collective bargaining continued, eventually leading to a new CBA. *See*, Berger, *supra*. As another example, in 1995, many NBA players, including star players such as Michael Jordan and Patrick Ewing, advocated de-unionization, but the NBPA itself opposed and defeated those efforts.[9] The fact of the matter is that just because many players, star players, or their counsel may advocate for de-unionization and/or antitrust litigation does not mean that the NBPA will actually do so. Spalding sells basketballs, not crystal balls, and the

---

[9] *See* Compl. ¶ 33-34; Mark Shapiro, *Ewing to Head NBA Players Union*, Chicago Tribune (Sept. 16, 1997), http://articles.chicagotribune.com/1997-09-16/sports/9709160079_1_patrick-ewing-president-buck-williams-felony-aggravated-battery-charge.

NBA's historical allegations do not plausibly establish an "imminent" threat of disclaimer and antitrust litigation today, much less when the Complaint was filed.

The NBA also alleges that the NBPA's collection "from many NBA players forms purporting to authorize the Union to disclaim interest in its role as the players' exclusive bargaining representative" shows "the Union's preparedness and intention to effectuate its threats of disclaimer and antitrust litigation."  Compl. ¶ 39. "Preparedness" and "intentions," however, are not the same thing.  Indeed, as the NBA well knows (and as the Court may judicially notice), the NBPA previously collected "authorization forms" in connection with the CBA negotiations in 1998.  *See Some NBA Agents are Making a Big Push for Decertification*, LATimes.com (Oct. 21, 1998), http://articles.latimes.com/1998/oct/21/sports/sp-34792.  But no disclaimer or antitrust litigation ensued.  *See, e.g.,* Comp. ¶ 35 (no allegation that disclaimer or antitrust litigation actually occurred).  Collecting authorization cards simply puts the NBPA in the position to consider one of its legitimate legal options if, in the future, the NBPA ever decides to exercise its members' labor law rights not to be represented by a union.

Finally, even if the Complaint *did* plead non-conclusory facts regarding the NBPA's purported "threats" (it does not), the NBPA nevertheless must be dismissed as a defendant for the independent reason that, whether acting as a union or as a post-disclaimer non-union, the NBPA would not have antitrust standing to bring the allegedly threatened antitrust litigation.[10]  *Cf. Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536-45 (1983) (antitrust standing requires that

---

[10] The declaratory judgment the NBA now seeks about the NBPA's ability, as a union, to bring an antitrust claim against the NBA is irrelevant because the NBA's own allegations are that antitrust litigation would only ensue if the NBPA first ceases to operate as a union.

plaintiff compete in the relevant market); *NHL v. NHLPA*, 789 F. Supp. at 292-293 (dismissing NHLPA for lack of standing to bring the threatened litigation). There cannot, therefore, be any antitrust case or controversy with the NBPA. Instead, the NBPA's lack of antitrust standing to bring such a suit, and the absence of allegations that any of the individual player defendants ever threatened to file an antitrust action, puts this case on all fours with the dismissal in *NHL v. NHLPA*.

## III.   EVEN IF THE COURT DOES NOT DISMISS THE COMPLAINT ON ITS FACE, DEFENDANTS' EVIDENCE DEMONSTRATES THAT THE NBA CANNOT MEET ITS BURDEN TO ESTABLISH SUBJECT MATTER JURISDICTION AS A MATTER OF FACT

When defendants challenge the factual basis for subject matter jurisdiction, a court is "not obligated to accord presumptive truthfulness to the allegations of the complaint." *Dow Jones*, 237 F. Supp. 2d at 404; *see also Filetech S.A. v. Fr. Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998). Rather, in such a situation, the Court must determine whether the declaratory judgment plaintiff has met its evidentiary burden to establish a ripe controversy.

Although defendants submit that the Court should dismiss this Complaint on its face, and thus not decide any evidentiary issues (Points I and II, *supra*), if the Court does not do so, it must then consider the evidence presented. That evidence will demonstrate that, contrary to Paragraph 38 or any other allegation in the Complaint, neither the NBPA nor the individual player defendants have threatened disclaimer or antitrust litigation – imminently or otherwise. The declarations submitted by defendants in support of this proposition include:

- The declaration of G. William Hunter (Executive Director of the NBPA) that:

    (i) neither in the "weeks and months leading up to the expiration of the

CBA" nor "continuing to date" has any NBPA representative threatened disclaimer or antitrust litigation;

(ii) the NBPA has made it clear in collective bargaining negotiations with the NBA that no decision to disclaim the NBPA's status as the collective bargaining representative of NBA players or to file antitrust litigation has been made;

(iii) while it is true that the subjects of disclaimer and antitrust action have come up during the time period put at issue by the NBA, those subjects were most often raised by *NBA* negotiators;

(iv) neither Mr. Hunter nor anyone else acting on behalf of the NBPA during the period at issue ever threatened that disclaimer and subsequent antitrust litigation would take place if the NBA took or did not take any particular course of action, including a lockout; and

(v) the NBPA has not conducted a vote of its Executive Committee to determine whether or when any disclaimer would occur.  *See* Declaration of G. William Hunter (filed concurrently herewith).

- Declarations of all of the named player-defendants that, in the weeks and months leading up to the expiration of the CBA, and since that time, they have not made, nor are they aware of, threats against the NBA or its teams that the NBPA will disclaim its union status or that they or any other players will file an antitrust suit against the NBA.  *See* Player Declarations (filed concurrently herewith).

The declarations also establish that no decision has been made by the NBPA to disclaim its status as the collective bargaining representative of NBA players or to support antitrust litigation, much less to "imminently" take either of these actions. Considering this evidence, the NBA cannot satisfy as a factual matter its burden to establish a case or controversy that is constitutionally ripe for review.  And, absent a determination that the NBA has met its evidentiary burden to establish jurisdiction, this case must be dismissed in its entirety.

**IV.   THE NBA'S COMPLAINT IS CLEARLY MOTIVATED BY IMPROPER FORUM SHOPPING, ANOTHER FACTOR FAVORING DISMISSAL**

Finally, this case should also be dismissed because it is a transparent attempt at litigation gamesmanship and forum shopping.  Courts often decline to exercise jurisdiction over declaratory judgment actions motivated by forum shopping because "[t]he federal declaratory judgment is not a prize to the winner of a race to the courthouses." *Perez*, 401 U.S. at 119 n.12; *see also Factors Etc.*, 579 F.2d at 219; *Great Am.*, 735 F. Supp. at 586 ("[T]he misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff . . . militates in favor of dismissing the declaratory judgment action."); WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2759 ("The courts properly decline relief if the declaratory-judgment procedure . . . is being used for 'procedural fencing' or 'in a race for res judicata.'") (citing authority).

The NBA contends that its forum shopping is permissible because this District is the "most appropriate forum" principally due to the fact that the NBA and NBPA are headquartered here.  NBA Pre-Motion Conference Ltr., at 4.  The locations of the NBPA and the NBA are, however, of little relevance because the theoretical antitrust dispute for which the NBA seeks declaratory relief would, at its core, be a dispute between NBA players, who live and play all over the country, and NBA teams, who are similarly scattered around the United States.  The NBPA, by contrast, would not even be a party to such litigation.  *See*, Point II, *supra*.  Moreover, the NBA's position ignores the fact that other than the NBA and Madison Square Garden, L.P., the twenty-nine other plaintiffs are *not* located in New York.  In the same vein, the NBA filed its Complaint as a putative class action, and the overwhelming majority of absent class members do not

live in this District either.  Thus, even to the extent that the location of witnesses and documents was relevant to the present motion (it is not), the location of several out of hundreds of potential parties does not render the Southern District of New York the most convenient forum.

Lastly, and in any event, in assessing a litigant's choice of forum, the principal consideration is the actual plaintiffs' – not the preemptive plaintiffs' – choice of when and where to sue.  17 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 111.13[1][c][i] (3d ed. 2011) ("[T]he weight given to the plaintiff's choice may be lessened in declaratory judgment actions in which the plaintiff has filed a preemptive action in order to deprive the 'natural plaintiff' of its choice of forum.").  The NBA's forum shopping for an advisory opinion should not be countenanced and provides yet another reason why the Complaint should be summarily dismissed.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request the Court grant their motion to dismiss the Complaint in its entirety for lack of subject matter jurisdiction.

Dated: September 16, 2011
      New York, New York


Evan Glassman
Alexis A. Hunter
750 Seventh Avenue, Suite 1800
New York, New York 10019
Telephone:  (212) 506-3900
Facsimile:  (212) 506-3950
eglassman@steptoe.com
ahunter@steptoe.com

Lawrence A. Katz (admitted *pro hac vice*)
Steven D. Wheeless (admitted *pro hac vice*)
201 E. Washington Street, Suite 1600
Phoenix, AZ 85004
Telephone: (602) 257-5200
Facsimile: (602) 257-5299
lkatz@steptoe.com
swheeless@steptoe.com

James F. Hibey (admitted *pro hac vice*)
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
jhibey@steptoe.com

**STEPTOE & JOHNSON LLP**

/s/ Jeffrey L. Kessler
Jeffrey L. Kessler
David G. Feher
David L. Greenspan

**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8050
Facsimile: (212) 259-6333
jkessler@dl.com
dfeher@dl.com
dgreenspan@dl.com

## CERTIFICATE OF SERVICE

I hereby certify that on 16th day of September, 2011, a true copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION was served upon the attorneys listed below via e-mail at the e-mail addresses designated, as follows:

> SKADDEN, ARPS. SLATE, MEAGHER & FLOM, LLP
> Four Times Square
> New York, New York 10036
> Attn:   Anthony Dreyer, Esq. (anthony.dreyer@skadden.com)
>          Jeffrey Mishkin, Esq.  (jeffrey.mishkin@skadden.com)

/s/  Jeffrey L. Kessler
JEFFREY L. KESSLER