# EXHIBIT A

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              1989
RECIPIENT ADDRESS     9266#99163#0001#12129692900#
DESTINATION ID
ST. TIME              05/24 13:46
TIME USE              01'13
PAGES SENT            5
RESULT                OK
```

# STEPTOE & JOHNSON LLP

## ATTORNEYS AT LAW

**WASHINGTON, DC**
FACSIMILE: 202.429.3902
VERIFICATION: 202.429.3000

**CHICAGO, ILLINOIS**
FACSIMILE 312.577.1370
VERIFICATION: 312.577.1300

**LONDON, ENGLAND**
**STEPTOE & JOHNSON**
FACSIMILE: 011.44.207.367.8001
VERIFICATION: 011.44.207.367.8000

**750 SEVENTH AVENUE**
**NEW YORK, NEW YORK 10019-6834**
FACSIMILE: 212.506.3950
VERIFICATION: 212.506.3900
MAIN NUMBER: 212.506.3900
www.steptoe.com

**BRUSSELS, BELGIUM**
FACSIMILE: 011.322.626.0510
VERIFICATION: 011.322.626.0500

**PHOENIX, ARIZONA**
FACSIMILE: 602.257.5299
VERIFICATION: 602.257.5287

**LOS ANGELES, CALIFORNIA**
FACSIMILE 213.439.9599
VERIFICATION: 213.439.9400

**CENTURY CITY, CALIFORNIA**
FACSIMILE 310.734.3300
VERIFICATION: 310.734.3200

**IMPORTANT:** This facsimile is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or its contents is strictly prohibited. If you have received this transmission in error, please notify us by telephoning and return the original transmission to us at the above address.

## DELIVER TO:

NAME: **Howard Ganz**

TELECOPY PHONE NUMBER: **212-969-2900**

COMPANY: **Proskauer Rose LLP**

VERIFICATION NUMBER: **212.969.3035**

TOTAL PAGES & COVER SHEET: **5**

DATE TRANSMITTED: **5/24/11**

S&J OPERATOR'S NAME: **Stacey L. Bascombe-Parke**

TELEPHONE NUMBER: **212-506-3915**

CLIENT/CASE NUMBER:

## FROM:

NAME: **Steven Wheeless**

| | | | |
|---|---|---|---|
| REQUEST MADE ON | DATE: **5/24/11** | TIME: **1:26 PM** |
| COMPLETION REQUIRED BY | DATE: **5/24/11** | TIME: |

# STEPTOE & JOHNSON LLP

### ATTORNEYS AT LAW

| | | |
|---|---|---|
| **WASHINGTON, DC**<br>FACSIMILE: 202.429.3902<br>VERIFICATION: 202.429.3000 | **750 SEVENTH AVENUE**<br>**NEW YORK, NEW YORK 10019-6834**<br>FACSIMILE: 212.506.3950<br>VERIFICATION: 212.506.3900<br>MAIN NUMBER: 212.506.3900<br>www.steptoe.com | **PHOENIX, ARIZONA**<br>FACSIMILE: 602.257.5299<br>VERIFICATION: 602.257.5287 |
| **CHICAGO, ILLINOIS**<br>FACSIMILE 312.577.1370<br>VERIFICATION: 312.577.1300 | | **LOS ANGELES, CALIFORNIA**<br>FACSIMILE 213.439.9599<br>VERIFICATION: 213.439.9400 |
| **LONDON, ENGLAND**<br>**STEPTOE & JOHNSON**<br>FACSIMILE: 011.44.207.367.8001<br>VERIFICATION: 011.44.207.367.8000 | **BRUSSELS, BELGIUM**<br>FACSIMILE: 011.322.626.0510<br>VERIFICATION: 011.322.626.0500 | **CENTURY CITY, CALIFORNIA**<br>FACSIMILE 310.734.3300<br>VERIFICATION: 310.734.3200 |

**IMPORTANT:** This facsimile is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or its contents is strictly prohibited. If you have received this transmission in error, please notify us by telephoning and return the original transmission to us at the above address.

## DELIVER TO:

NAME: **Howard Ganz**          TELECOPY PHONE NUMBER: **212-969-2900**

COMPANY: **Proskauer Rose LLP**          VERIFICATION NUMBER: **212.969.3035**

TOTAL PAGES & COVER SHEET: **5**          DATE TRANSMITTED: **5/24/11**

S&J OPERATOR'S NAME: **Stacey L. Bascombe-Parke**          TELEPHONE NUMBER: **212-506-3915**

CLIENT/CASE NUMBER:

## FROM:

NAME: **Steven Wheeless**

REQUEST MADE ON          DATE: **5/24/11**          TIME: **1:26 PM**

COMPLETION REQUIRED BY          DATE: **5/24/11**          TIME:

## SPECIAL INSTRUCTIONS:

# STEPTOE & JOHNSON LLP

### ATTORNEYS AT LAW

Lawrence Allen Katz
602.257.5211
lkatz@steptoe.com

Steven D. Wheeless
602.257.5234
swheeless@steptoe.com

Collier Center
201 East Washington Street
Suite 1600
Phoenix, AZ 85004-2382
Tel 602.257.5200
Fax 602.257.5299
steptoe.com

May 24, 2011

**VIA ELECTRONIC MAIL &**
**FACSIMILE (212-969-2900)**

Howard L. Ganz
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299

Dear Howard:

    We have been retained by the National Basketball Players Association to represent it in connection with ongoing negotiations over a new labor contract and in connection with matters before the NLRB. In that regard, please be advised that we have today filed, on behalf of the NBPA, an unfair labor practice charge with Region 2 of the NLRB. A copy of that charge is attached hereto.

Very truly yours,

Lawrence Allen Katz
Steven D. Wheeless

LAK/SDW:jm
Enclosure

621355

FORM EXEMPT UNDER 44 U.S.C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br><br>National Basketball Association and see attached | | b. Tel. No.<br>(212) 407-8000 |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No.<br>(212) 407-7990 |
| d. Address (Street, city, state, and ZIP code)<br><br>645 Fifth Avenue<br>New York, NY 10022 | e. Employer Representative<br><br>David S. Stern<br>Commissioner | g. e-Mail |
| | | h. Number of workers employed<br>500 + |
| i. Type of Establishment (factory, mine, wholesaler, etc.)<br>Sports League | j. Identify principal product or service<br>Professional Basketball Games | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and *(list*

*subsections)*  8(a)(5) and 8(d) _____ _____ of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce
within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

SEE ATTACHED

| 3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*<br><br>National Basketball Players Association | |
|---|---|
| 4a. Address (Street and number, city, state, and ZIP code)<br><br>310 Lenox Avenue<br>New York, NY 10027 | 4b. Tel. No.<br>(212) 655-0888 |
| | 4c. Cell No. |
| | 4d. Fax No.<br>(212) 655-0889 |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*
N/A

### 6. DECLARATION

| I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No.<br>(602) 257-5200 |
|---|---|
| Lawrence A. Katz<br>Steven D. Wheeless<br>By _____ Attorneys for NBPA | Office, if any, Cell No. |
| (signature of representative or person making charge)     (Print/type name and title or office, if any) | Fax No.<br>(602) 257-5299 |
| Steptoe & Johnson LLP<br>201 East Washington Street, Suite 1600 | e-Mail<br>lkatz@steptoe.com |
| Address Phoenix, AZ 85004-2382                    (date) | swheeless@steptoe.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

## 1.a. Name of Employer

| TEAM | PHONE | STREET | CITY | STATE | ZIP |
|---|---|---|---|---|---|
| ATLANTA HAWKS | (404) 878-3825 | 101 Marietta Street, Suite 1900 | Atlanta | GA | 30303 |
| BOSTON CELTICS | (781) 522-2640 | 226 Causeway Street, 4th Floor | Boston | MA | 02114 |
| CHARLOTTE BOBCATS | (704) 688-8975 | 333 E. Trade Street | Charlotte | NC | 28202 |
| CHICAGO BULLS | (847) 444-8700 | 550 Lake Cook Road | Deerfield | IL | 60015 |
| CLEVELAND CAVS | (216) 420-2227 | 1 Center Court | Cleveland | OH | 44115 |
| DALLAS MAVS | (214) 665-4633 | 2500 Victory Avenue | Dallas | TX | 75219 |
| DENVER NUGGETS | (303) 405-1150 | 1000 Chopper Circle | Denver | CO | 80204 |
| DETROIT PISTONS | (248) 377-0116 | 6 Championship Drive | Auburn Hills | MI | 48326 |
| GOLDEN STATE | (510) 986-2248 | 1011 Broadway | Oakland | CA | 94607 |
| HOUSTON ROCKETS | (713) 758-7441 | 1510 Polk Street | Houston | TX | 77002 |
| INDIANA PACERS | (317) 917-2500 | 125 S. Pennsylvania Street | Indianapolis | IN | 46204 |
| LOS ANGELES CLIPPERS | (310) 862-6088 | 6951 S. Centinela Avenue | Playa Vista | CA | 90094 |
| LOS ANGELES LAKERS | (310) 426-6011 | 555 N. Nash Street | El Segundo | CA | 90245 |
| MEMPHIS GRIZZLIES | (901) 205.1106 | 191 Beale Street | Memphis | TN | 38103 |
| MIAMI HEAT | (786) 777-4459 | 601 Biscayne Blvd | Miami | FL | 33132 |
| MILWAUKEE BUCKS | (414) 227-0500 | 1001 N. Fourth Street | Milwaukee | WI | 53203 |
| MINNESOTA TIMBERWOLVES | (612) 673-1621 | 600 First Avenue N | Minneapolis | MN | 55403 |
| NEW JERSEY NETS | (201) 635-3100 | 390 Murray Hill Parkway | East Rutherford | NJ | 07073 |
| NEW ORLEANS HORNETS | (504) 593-4943 | 1250 Poydras Street, 19th Floor | New Orleans | LA | 70113 |
| NEW YORK KNICKS | (212) 485-7056 | Two Penn Plaza, 14th Floor | New York | NY | 10121 |
| OKLAHOMA CITY THUNDER | (405) 208-4836 | 14701 N. Lincoln Blvd | Edmond | OK | 73013 |
| ORLANDO MAGIC | (407) 916-2438 | 400 W. Church Street, Suite 250 | Orlando | FL | 32801 |
| PHILADELPHIA 76ERS | (215) 339-7622 | 3601 S. Broad Street | Philadelphia | PA | 19148 |
| PHOENIX SUNS | (602) 379-7978 | 201 E. Jefferson Street | Phoenix | AZ | 85004 |
| PORTLAND TRAILBLAZERS | (503) 797-9836 | One Center Court, Suite 200 | Portland | OR | 97227 |
| SACRAMENTO KINGS | (916) 286-3400 | ARCO Arena One Sports Parkway | Sacramento | CA | 95834 |
| SAN ANTONIO SPURS | (210) 444-5764 | One Spurs Lane | San Antonio | TX | 78240 |
| TORONTO RAPTORS | (416) 815-5718 | 50 Bay Street, Suite 500 | Toronto | ON | M5J 2L2 |
| UTAH JAZZ | (801) 325-2636 | 301 W. South Temple | Salt Lake City | UT | 84101 |
| WASHINGTON WIZARDS | (202) 661-5087 | 601 F Street NW | Washington | DC | 20004 |

## 2. **Basis of the Charge**

Prior to and during the last six months, and throughout the parties' communications related to a Collective Bargaining Agreement ("CBA") to replace the one expiring on June 30, 2011, the above-named Employers' bargaining representative (NBA), has violated and continues to violate Sections 8(a)(1), 8(a)(5), and 8(d) of the National Labor Relations Act by: (1) making harsh, inflexible, and grossly regressive "takeaway" demands that the NBA knows are not acceptable to the Union and not supported by objective or reasonable factors or balanced by appropriate trade-offs; (2) engaging in classic "take it or leave it" and surface bargaining intended to delay action on a renewal CBA until the NBA locks out the represented employees in order to coerce them into accepting the NBA's harsh and regressive demands; (3) engaging in direct dealing with unit employees; (4) failing and refusing to provide relevant financial information properly requested and needed by the Union to understand, test, and analyze the NBA's asserted justification, based on financial weakness, for its grossly regressive contract demands; (5) repeatedly threatening to lock out Union-represented employees upon contract expiration regardless of negotiation status, without fear of a strike, based on a pretextual claim of financial weakness, and despite the foregoing bad-faith bargaining; (6) threatening Union-represented employees that the NBA will force them to pay for the cost of a lockout through even more draconian takeaways from their CBA; and (7) making demands and threats that are inherently destructive to the collective bargaining process and to employee rights, and that reflect the NBA's hostility to that process and those rights and are intended to signal to Union-represented employees that back-and-forth bargaining is futile.

By these and other acts, the NBA has interfered with, restrained, and coerced employees in the exercise of their Section 7 rights and violated its obligations under Sections 8(a)(5) and 8(d) to engage in good-faith bargaining with the representative of the affected employees.

# EXHIBIT B

FORM EXEMPT UNDER 44 U.S.C 3512

INTERNET
FORM NLRB-501
(2-08)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
AMENDED **CHARGE AGAINST EMPLOYER**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

## 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer <br><br> National Basketball Association and see attached | | b. Tel. No.  (212) 407-8000 |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No.  (212) 407-7990 |
| d. Address (Street, city, state, and ZIP code) <br> 645 Fifth Avenue <br> New York, NY 10022 | e. Employer Representative <br> David S. Stern <br> Commissioner | g. e-Mail |
| | | h. Number of workers employed <br> 500+ |
| i. Type of Establishment (factory, mine, wholesaler, etc.) <br> Sports League | j. Identify principal product or service <br> Professional Basketball Games | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list

subsections)  8(a)(5) and (d)                                          of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce
within the meaning of the Act and the Postal Reorganization Act.

**2. Basis of the Charge** (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

SEE ATTACHED

| 3. Full name of party filing charge (if labor organization, give full name, including local name and number) <br> National Basketball Players Association | | |
|---|---|---|
| 4a. Address (Street and number, city, state, and ZIP code) <br><br> 310 Lenox Avenue <br> New York, NY 10027 | | 4b. Tel. No.  (212) 655-0888 |
| | | 4c. Cell No. |
| | | 4d. Fax No.  (212) 655-0889 |
| | | 4e. e-Mail |

5. Full name of national or International labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor
organization)  N/A

| 6. DECLARATION <br> I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. <br><br> By _____ <br> (signature of representative or person making charge) <br><br> Address _____ Steptoe & Johnson LLP 201 E. Washington Phoenix AZ 85004 | Lawrence A. Katz; Steven D. Wheeless <br> (Print/type name and title or office, if any) <br><br> 06/20/2011 <br> (date) | Tel. No.  (602) 257-5200 |
|---|---|---|
| | | Office, if any, Cell No. |
| | | Fax No.  (602) 257-5299 |
| | | e-Mail <br> swheeless@steptoe.com |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

## 1.a. Name of Employer

| TEAM | PHONE | STREET | CITY | STATE | ZIP |
|------|-------|--------|------|-------|-----|
| ATLANTA HAWKS | (404) 878-3825 | 101 Marietta Street, Suite 1900 | Atlanta | GA | 30303 |
| BOSTON CELTICS | (781) 522-2640 | 226 Causeway Street, 4th Floor | Boston | MA | 02114 |
| CHARLOTTE BOBCATS | (704) 688-8975 | 333 E. Trade Street | Charlotte | NC | 28202 |
| CHICAGO BULLS | (847) 444-8700 | 550 Lake Cook Road | Deerfield | IL | 60016 |
| CLEVELAND CAVS | (216) 420-2227 | 1 Center Court | Cleveland | OH | 44116 |
| DALLAS MAVS | (214) 665-4653 | 2500 Victory Avenue | Dallas | TX | 75219 |
| DENVER NUGGETS | (303) 405-1150 | 1000 Chopper Circle | Denver | CO | 80204 |
| DETROIT PISTONS | (248) 377-0116 | 6 Championship Drive | Auburn Hills | MI | 48326 |
| GOLDEN STATE | (510) 986-2248 | 1011 Broadway | Oakland | CA | 94607 |
| HOUSTON ROCKETS | (713) 758-7441 | 1510 Polk Street | Houston | TX | 77002 |
| INDIANA PACERS | (317) 917-2500 | 125 S. Pennsylvania Street | Indianapolis | IN | 46204 |
| LOS ANGELES CLIPPERS | (310) 862-0088 | 8951 S. Centinela Avenue | Playa Vista | CA | 90094 |
| LOS ANGELES LAKERS | (310) 426-6011 | 555 N. Nash Street | El Segundo | CA | 90245 |
| MEMPHIS GRIZZLIES | (901) 205.1106 | 191 Beale Street | Memphis | TN | 38103 |
| MIAMI HEAT | (786) 777-4469 | 601 Biscayne Blvd | Miami | FL | 33132 |
| MILWAUKEE BUCKS | (414) 227-0500 | 1001 N. Fourth Street | Milwaukee | WI | 53203 |
| MINNESOTA TIMBERWOLVES | (612) 673-1621 | 600 First Avenue N | Minneapolis | MN | 55403 |
| NEW JERSEY NETS | (201) 635-3100 | 390 Murray Hill Parkway | East Rutherford | NJ | 07073 |
| NEW ORLEANS HORNETS | (504) 593-4643 | 1250 Poydras Street, 19th Floor | New Orleans | LA | 70113 |
| NEW YORK KNICKS | (212) 465-7056 | Two Penn Plaza, 14th Floor | New York | NY | 10121 |
| OKLAHOMA CITY THUNDER | (405) 208-4636 | 14701 N. Lincoln Blvd | Edmond | OK | 73013 |
| ORLANDO MAGIC | (407) 916-2438 | 400 W. Church Street, Suite 250 | Orlando | FL | 32801 |
| PHILADELPHIA 76ERS | (215) 339-7622 | 3601 S. Broad Street | Philadelphia | PA | 19148 |
| PHOENIX SUNS | (602) 379-7978 | 201 E. Jefferson Street | Phoenix | AZ | 85004 |
| PORTLAND TRAILBLAZERS | (503) 797-9836 | One Center Court, Suite 200 | Portland | OR | 97227 |
| SACRAMENTO KINGS | (916) 288-3400 | ARCO Arena One Sports Parkway | Sacramento | CA | 95834 |
| SAN ANTONIO SPURS | (210) 444-5764 | One Spurs Lane | San Antonio | TX | 78240 |
| TORONTO RAPTORS | (416) 815-5718 | 50 Bay Street, Suite 500 | Toronto | ON | M5J 2L2 |
| UTAH JAZZ | (801) 325-2638 | 301 W. South Temple | Salt Lake City | UT | 84101 |
| WASHINGTON WIZARDS | (202) 661-5087 | 601 F Street NW | Washington | DC | 20004 |

## 2. <u>Basis of the Charge</u>

Prior to and during the last six months, and throughout the parties' communications related to a Collective Bargaining Agreement ("CBA") to replace the one expiring on June 30, 2011, the above-named Employers' bargaining representative (NBA), has violated and continues to violate Sections 8(a)(1), 8(a)(5), and 8(d) of the National Labor Relations Act by: (1) making harsh, inflexible, and grossly regressive "takeaway" demands that the NBA knows are not acceptable to the Union and not supported by objective or reasonable factors or balanced by appropriate trade-offs; (2) engaging in classic "take it or leave it" and surface bargaining intended to delay action on a renewal CBA until the NBA locks out the represented employees in order to coerce them into accepting the NBA's harsh and regressive demands; (3) engaging in direct dealing with unit employees; (4) failing and refusing to provide relevant financial information properly requested and needed by the Union to understand, test, and analyze the NBA's bargaining proposals as well as its asserted justification, based on financial weakness, for its grossly regressive contract demands; (5) repeatedly threatening to lock out Union-represented employees upon contract expiration and make unilateral contract and past practice changes regardless of negotiation status, without fear of a strike, based on a pretextual claim of financial weakness, and despite the foregoing bad-faith bargaining; (6) threatening Union-represented employees that the NBA will force them to pay for the cost of a lockout through even more draconian takeaways from their CBA; and (7) making demands and threats that are inherently destructive to the collective bargaining process and to employee rights, and that reflect the NBA's hostility to that process and those rights and are intended to signal to Union-represented employees that back-and-forth bargaining is futile.

Additionally, the NBA unilaterally changed employees' terms and conditions of employment by cancelling the Las Vegas Summer League on or about June 17, 2011. The Summer League is a mandatory subject of bargaining under the current Collective Bargaining Agreement between the NBA and the NBPA, which specifically defines terms and conditions for player participation in the Summer League, and is based on established past practice.  The NBA failed to provide the NBPA with a reasonable opportunity to bargain over the unilateral change, which the NBA publicly announced as a fait accompli following the conclusion of the parties' bargaining session on June 17, 2011.  Additionally, that unilateral change will immediately and irreparably harm employee players, justifying 10(j) injunctive relief.

By these and other acts, the NBA has interfered with, restrained, and coerced employees in the exercise of their Section 7 rights and violated its obligations under Sections 8(a)(5) and 8(d) to engage in good-faith bargaining with the representative of the affected employees.

# EXHIBIT C

FORM EXEMPT UNDER 44 U.S.C 3512

| INTERNET<br>FORM NLRB-501<br>(2-08) | UNITED STATES OF AMERICA<br>NATIONAL LABOR RELATIONS BOARD<br>Second Amended CHARGE AGAINST EMPLOYER | DO NOT WRITE IN THIS SPACE | |
|---|---|---|---|
| | | Case | Date Filed |

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| a. Name of Employer<br>National Basketball Association and see attached | | b. Tel. No. (212) 407-8000 |
|---|---|---|
| | | c. Cell No. |
| | | f. Fax No. (212) 407-7990 |
| d. Address (Street, city, state, and ZIP code)<br>645 Fifth Avenue<br>New York, NY 10022 | e. Employer Representative<br>David S. Stern<br>Commissioner | g. e-Mail |
| | | h. Number of workers employed<br>500+ |
| i. Type of Establishment (factory, mine, wholesaler, etc.)<br>Sports League | j. Identify principal product or service<br>Professional Basketball Games | |

k. The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list

subsections) 8(a)(1), 8(a)(3), 8(a)(5) and 8(d)                            of the National Labor Relations Act, and these unfair labor

practices are practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce
within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

SEE ATTACHED

3. Full name of party filing charge (if labor organization, give full name, including local name and number)
National Basketball Players Association

| 4a. Address (Street and number, city, state, and ZIP code)<br><br>310 Lenox Avenue<br>New York, NY 10027 | 4b. Tel. No. (212) 655-0888 |
|---|---|
| | 4c. Cell No. |
| | 4d. Fax No. (212) 655-0889 |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit (to be filled in when charge is filed by a labor
organization)   N/A

| 6. DECLARATION<br>I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief. | Tel. No. (602) 257-5200 |
|---|---|
| | Office, if any, Cell No. |
| By _____    Lawrence A. Katz; Steven D. Wheeless | Fax No. (602) 257-5299 |
| (signature of representative or person making charge)    (Print/type name and title or office, if any) | e-Mail |
| Address   Steptoe & Johnson LLP 201 E. Washington Phoenix AZ 85004   7/01/11<br>(date) | swheeless@steptoe.com |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist
the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in
the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is
voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

## 2. Basis of the Second Amended Charge

Prior to and during the last six months, and throughout the parties' communications related to a Collective Bargaining Agreement ("CBA") to replace the one expiring on June 30, 2011, the above-named Employers' bargaining representative National Basketball Association and the NBA owners/teams (collectively "the NBA"), have violated and continue to violate Sections 8(a)(1), 8(a)(3), 8(a)(5), and 8(d) of the National Labor Relations Act by: (1) making harsh, inflexible, and grossly regressive "takeaway" demands that the NBA knows are not acceptable to the Union and not supported by objective or reasonable factors or balanced by appropriate trade-offs; (2) engaging in classic "take it or leave it" and surface bargaining intended to delay action on a renewal CBA until the NBA locks out the represented employees in order to coerce them into accepting the NBA's harsh and regressive demands; (3) engaging in direct dealing with unit employees; (4) failing and refusing to provide relevant financial information properly requested and needed by the Union to understand, test, and analyze the NBA's bargaining proposals as well as its asserted justification, based on financial weakness, for its grossly regressive contract demands; (5) repeatedly threatening to lock out Union-represented employees upon contract expiration and make unilateral contract and past practice changes regardless of negotiation status, without fear of a strike, based on a pretextual claim of financial weakness, and despite the foregoing bad-faith bargaining; (6) threatening Union-represented employees that the NBA's bargaining proposals will get worse in the event of a lockout and that the NBA will force them to pay for the cost of a lockout through even more draconian takeaways from their CBA; and (7) making demands and threats that are inherently destructive to the collective bargaining process and to employee rights, and that reflect the NBA's hostility to that process and those rights and are intended to signal to Union-represented employees that back-and-forth bargaining is futile.

Additionally, the NBA unilaterally changed employees' terms and conditions of employment by cancelling the Las Vegas Summer League on or about June 17, 2011. The Summer League is a mandatory subject of bargaining under the current Collective Bargaining Agreement between the NBA and the NBPA, which specifically defines terms and conditions for player participation in the Summer League, and is based on established past practices. The NBA failed to provide the NBPA with a reasonable opportunity to bargain over the unilateral change, which the NBA publicly announced as a fait accompli following the conclusion of the parties' bargaining session on June 17, 2011.

In addition, on July 1, 2011, the NBA carried out the aforementioned threats by ceasing all operations related to union-employees and locking them out as described in the NBA's April 28, 2011 "Team Operations During A Lockout" Memo and its June 30, 2011 Lockout notice to the Union. The lockout occurred despite the fact that no impasse has happened, the NBA has asserted no (and has no) legally sufficient business justification, and they have admitted in negotiations that the lockout will cost them approximately $1.5 billion per year. The NBA and the owners began the lockout despite knowing of the pending ULP charges against their bad faith bargaining, direct dealing,

failure to produce relevant documents and information, unilateral changes, lockout threats, and other unlawful acts. The NBA implemented the lockout to compel the employees' acceptance of the NBA's illegally tainted bargaining scheme.

Further, on July 1, 2011, as directed in the NBA's April 28, 2011 Lockout Memo and its June 30, 2011 letter to the Union, the NBA instituted sweeping unilateral changes to the employees' terms and conditions of employment without giving the Union notice or an opportunity to bargain over those changes.

By these and other acts, the NBA has interfered with, restrained, and coerced employees in the exercise of their Section 7 rights and violated its obligations under Sections 8(a)(1), 8(a)(3), 8(a)(5) and 8(d) to engage in good-faith bargaining with the representative of the affected employees and refrain from unlawful discrimination against its employees.

Because the Union-represented employee players will suffer immediate and irreparable harm from the unlawful lockout and radical unilateral changes, the Union requests the NLRB to seek immediate injunctive relief under Section 10(j) of the Act. If such relief is not sought and granted, any ultimate ruling on the merits and corresponding remedy will be rendered meaningless and ineffectual for many affected employees due to the time-sensitive nature of many factors affecting this particular work environment.

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### FOURTH DIVISION

| | | |
|---|---|---|
| National Hockey League, et al., | ) | Civil Action No. 4-91-636 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| National Hockey League | ) | |
| Players Association, and | ) | |
| Robert S. Gavin, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF MOTION
TO DISMISS PURSUANT TO
F.R.C.P. 12(b)(1) AND (6)**

TABLE OF CONTENTS

Page

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      THE COURT SHOULD DISMISS THE PRESENT ACTION FOR
        LACK OF SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . 7

        A.      A Declaratory Judgment Action Requires A Case or
                Controversy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.      No Case or Controversy Exists Between These "Plaintiffs" and
                the NHLPA As To Any Putative Antitrust Claims Because the
                NHLPA Lacks Standing . . . . . . . . . . . . . . . . . . . . . . . . 9

        C.      No Case or Controversy Has Even Been Alleged Between the
                NHL "Plaintiffs" and the Named Players . . . . . . . . . . . . . 12

II.     EVEN IF THE COURT HAD JURISDICTION OVER ALL OR PART
        OF THE NHL'S CLAIMS, THE COURT SHOULD EXERCISE ITS
        DISCRETION AND DISMISS THE ACTION . . . . . . . . . . . . . . . 16

        A.      Exercise of Jurisdiction is a Matter of Discretion . . . . . . . . . . 16

        B.      The Court Should Exercise Its Discretion And Dismiss This
                Action As Fostering Improper Tactical Forum Shopping . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

**CASES**                                                                                            Page

Adams Dairy Co. v. National Dairy Products Corp., 293 F. Supp. 1135
(W.D. Mo. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227 (1937) . . . . . . . . . . . . . . . . . . . . . 8

Alsager v. District Court, 518 F.2d 1160 (8th Cir. 1975) . . . . . . . . . . . . . . . . . . . 16

Amerada Petroleum Corp. v. Marshall, 381 F.2d 661 (5th Cir. 1967),
cert. denied, 389 U.S. 1039 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

American Federation of Rail Road Police v. Nat'l Rail Road
Passenger Corp., 832 F.2d 14 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 10

Ashenhurst v. Carey, 351 F. Supp. 708 (N.D. Ill. 1972) . . . . . . . . . . . . . . . . . . . 9

Associated General Contractors v. California State Council of Carpenters,
459 U.S. 519 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

American Auto. Ins. Co. v. Freundt, 103 F.2d 613 (7th Cir. 1939) . . . . . . . . . . . . 17

Babbit v. United Farm Workers National Union, 442 U.S. 289 (1979) . . . . . . . . . . . 13

Board of Educ. v. HEW, 396 F. Supp. 203 (S.D. Ohio 1975), aff'd in
part, rev'd in part on other grounds, 532 F.2d 1070
(6th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Board of Regents v. MSE Corp., 1990 U.S. Dist. LEXIS 17344
(W.D. Mo. Nov. 20, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942) . . . . . . . . . . . . . . . . . . 16

C.H. v. Sullivan, 718 F. Supp. 726 (D. Minn. 1989), aff'd,
920 F.2d 483 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Page

CNA Fin. Corp. v. Home Indem. Co., 703 F. Supp. 759 (N.D. Ill. 1989)   . . . . . . . 21

Cafano v. Cimmino, 501 F. Supp. 397 (D. Conn. 1980), aff'd,
636 F.2d 1200 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Casualty Idem. Exchange v. High Croft Enter., 714 F. Supp. 1190
(S.D. Fla. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Chicago Furniture Forwarding Co. v. Bowles, 161 F.2d 411 (7th
Cir. 1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Columbia Pictures Indus., Inc. v. Schneider, 435 F. Supp. 742
(S.D.N.Y. 1977), aff'd, 573 F.2d 1288 (2d Cir. 1978) . . . . . . . . . . . . . . . . . 19

Eccles v. Peoples Bank, 333 U.S. 426 (1948) . . . . . . . . . . . . . . . . . . . . . . 16

Factors, Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215 (2nd Cir. 1978),
cert. denied, 440 U.S. 980 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Farmers Co-op Co. v. Socony-Vacuum Oil Co., 133 F.2d 101
(8th Cir. 1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fireman's Fund Insur. Co. v. Ignacio, 860 F.2d 353 (9th Cir. 1988) . . . . . . . . . . . 25

Golden v. Zwickler, 394 U.S. 103 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hanes Corp. v. Millard, 531 F.2d 585 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . 18

Illinois v. General Electric Co., 683 F.2d 206 (7th Cir. 1982),
cert. denied, 461 U.S. 913 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Koehler v. Ogilvie, 53 F.R.D. 98 (N.D. Ill. 1971), aff'd,
405 U.S. 906 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kurtz v. Baker, 829 F.2d 1133 (D.C. Cir. 1987), cert. denied,
486 U.S. 1059 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lake Carriers Assoc. v. MacMullan, 406 U.S. 498 (1972) . . . . . . . . . . . . . . . . 13

iii

Page

McCourt v. California Sports Inc., 460 F.Supp 904 (E.D. Mich. 1978),
vacated, 600 F.2d 1193 (6th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599
(5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Nuclear Engineering Co. v. Scott, 660 F.2d 241 (7th Cir. 1981),
cert. denied, 445 U.S. 993 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Pesez v. Ledesma, 401 U.S. 82 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Plumbers & Steamfitters Local 598 v. Morris, 511 F. Supp. 1298
(E.D. Wash. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Powell v. National Football League, 930 F.2d 1293 (8th Cir. 1989),
cert. denied, 111 S. Ct. 711 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10,
                                                                                        19

Regional Rail Reorganization Act Cases, 419 U.S. 102 (1974) . . . . . . . . . . . . . . . 13

Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950) . . . . . . . . . . . . . . . 8

Smith v. Blackwell, 115 F.2d 186 (4th Cir. 1940) . . . . . . . . . . . . . . . . . . . . . . .9

State Farm Fire and Cas. Co. v. Poomaihealani, 667 F. Supp. 705
(D. Haw. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

State Farm Fire and Cas. v. Taylor, 118 F.R.D. 426
(M.D.N.C. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18, 21

State of West Virginia v. Morton Int'l Inc., 264 F. Supp. 689
(D. Minn. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Tempco Elec. Heater Corp. v. Omega Eng'g, 819 F.2d 746
(7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 20

Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213
(3rd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18, 20

Page

Travelers Indem. Co. v. Boles, 503 F. Supp. 179 (N.D. Cal. 1980),
aff'd, 673 F.2d 1340 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Travelers Indem. Co. v. Winmill, 294 F. Supp. 394 (D. Minn. 1968) . . . . . . . . . . . 16

Twin City Fed. Sav. and Loan Assoc. v. Gelhar, 525 F. Supp. 802
(D. Minn. 1981), aff'd, 681 F.2d 528 (8th Cir. 1982) . . . . . . . . . . . . . . . . . . 16, 19

United Public Workers of America v. Mitchell, 330 U.S. 75 (1947) . . . . . . . . . . . . 14

United States v. National City Lines, 334 U.S. 573 (1948) . . . . . . . . . . . . . . . . . . 20

Van-Fuel Inc. v. Dep't of the Treasury, 673 F.2d 1194 (11th Cir. 1982) . . . . . . . . . 18

Vorbeck v. Schnicker, 660 F.2d 1260 (8th Cir. 1981), cert. denied,
455 U.S. 921 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13,
                                                                                          14

Warth v. Seldin, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Williams Pipe Line v. City of Mounds View, 704 F.Supp. 914
(D. Minn. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATUTES

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

F.R.C.P. 12(b)(1) and (6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## OTHER AUTHORITIES

E. Borchard, Declaratory Judgments (2d Ed. 1941) . . . . . . . . . . . . . . . . . . . . . 16

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | | |
|---|---|---|
| National Hockey League, et al., | ) | Civil Action No. 4-91-636 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **DEFENDANT'S MEMORANDUM** |
| | ) | **IN SUPPORT OF MOTION** |
| National Hockey League | ) | **TO DISMISS PURSUANT TO** |
| Players Association, and | ) | **F.R.C.P. 12(b)(1) AND (6)** |
| Robert S. Gavin, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

Defendants National Hockey League Players Association ("NHLPA"), Robert S. Gavin, David Maley, Shawn Chambers, Tom Kurvers, Don Beaupre, Brad Wilner and Steve Magnusson (these seven collectively the "Named Players") bring this motion to dismiss on two grounds pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(1) and (6).  First, the Court lacks subject matter jurisdiction over this action because of the lack of any case or controversy.  Second, assuming arguendo that the Court has jurisdiction, the so-called "plaintiffs" here have failed to state a claim for declaratory judgment relief as a matter of law.

These two bases for dismissal both stem from the fact, clear from the face of the complaint, that this litigation represents forum shopping in its most blatant form. In the midst of collective bargaining with the NHLPA (the bargaining agent for current professional hockey players), the "plaintiffs" -- the National Hockey League ("NHL") and its 22 member clubs -- seek to cloak themselves in the garb of putative defendants in some as yet unborn, unthreatened, undefined future litigation. In doing so, they have manufactured a theory that the NHLPA is a possible antitrust plaintiff and have invented a supposititious defendants' class of would-be antitrust antagonists -- the players -- who may someday seek vindication of their rights. These forum shoppers then raced to this district court solely because it is within the Eighth Circuit, believing that this of all Circuits has law which would validate the forum shoppers' defense based on the non-statutory labor exemption to the antitrust laws, in the antitrust case they just invented.[1] Finally, to come full circle, these "plaintiffs" filed a motion for summary judgment, based upon their distorted views of the facts and of Powell, just as soon as the Federal Rules allowed them to, attempting to close the door on antitrust litigation which does not even exist.

---

1. See Powell v. National Football League, 930 F.2d 1293 (8th Cir. 1989), cert. denied, 111 S. Ct. 711 (1991). Not surprisingly, in their zest to piggyback on Powell, the NHL has even retained the same law firm and the same lawyers which represented the NFL in that case.

2

The NHL and its clubs have so transparently jumped the gun in their race to the courthouse that, in their haste, they have presented this Court with a slapped-together action lacking any justiciable controversy and without any appropriate defendants.  This Court should reject the NHL's impermissible forum shopping by dismissing this action now.

As demonstrated below, this attempt at a preemptive strike has left this case fraught with fatal defects.  To start with, subject matter jurisdiction is entirely lacking.  This Court simply has not been presented with an actual case or controversy.  In suing the NHLPA, the putative plaintiffs have sued a party which lacks standing to bring the very antitrust suit that this action is deliberately designed to forestall.  Therefore, this case cannot be maintained against the NHLPA.  Also, the NHL "plaintiffs" have failed to allege that any justiciable controversy exists between them and the Named Players (nor can they do so), or between them and the "defendant class" of all NHL players which "plaintiffs" have manufactured as the "threat" to sue them under the antitrust laws.  Certainly no dispute which rises to the level of a "case or controversy" has been even hinted at, much less alleged properly - - because such a dispute does not exist.

Even should the NHL "plaintiffs" somehow surmount this threshold jurisdictional hurdle, this Court as a matter of law has the discretion to dismiss this putative declaratory judgment action, and has strong reasons to exercise such

3

discretion in this manner.  This case is everything a declaratory action should not be: it engages in forum shopping, it manufactures a non-existent controversy and it deprives individual players of the right to choose their own forum and timing (should it develop that one or more players ever decide to assert claims under the antitrust laws).

For these reasons, defendants respectfully request that this Court dismiss plaintiffs' action.

## BACKGROUND

The undisputed facts of record follow.  On June 1, 1988, the NHL member clubs and the NHLPA executed a collective bargaining agreement (the "1988 Agreement") which covered the terms and conditions of employment of NHL hockey players for a period of three years.  See Complaint for Declaratory Judgment (hereinafter "Complaint") ¶ 36. The 1988 Agreement expired by its terms on September 15, 1991.  Id. ¶ 37.

Both before and after September 15, the NHLPA has engaged in ongoing collective bargaining with the NHL, and has repeatedly demonstrated its willingness to continue to do so.  See Declaration of John A. Ziegler, Jr. (hereinafter "Ziegler Affidavit") filed in support of the NHL's motion for summary judgment, at ¶ 13 ("Both sides continue to exchange proposals, meet, and negotiate with the intent of achieving a new collective bargaining agreement . . . .").

On August 20, 1991, while the parties were engaged in ongoing collective bargaining, just prior to the expiration of the 1988 Agreement, the NHL and its clubs filed a declaratory judgment action in this Court alleging, among other things, that the non-statutory labor exemption to the antitrust laws would continue to insulate them from antitrust scrutiny after the expiration of the 1988 Agreement. However, as the NHL "plaintiffs" themselves admit, this suit has jumped the gun; the parties are still engaged in bargaining, as demonstrated in papers filed by plaintiffs a month after filing their Complaint.  See Ziegler Affidavit at ¶ 13; Memorandum in Support of Plaintiffs' Motion for Summary Judgment (hereinafter "Plaintiffs' Memorandum") at 6 ("[P]laintiffs will continue their efforts to achieve a new collective bargaining agreement.").

Furthermore, it is not alleged that one of the Named Players has ever indicated any intention to litigate any antitrust issues against the "plaintiffs," and no such allegation is made with regard to any other current NHL player.  The conspicuous absence of an allegation to this effect in the Complaint is dispositive. (See generally Complaint.)

It is understandable that the NHLPA has examined hockey's labor situation in light of the antitrust laws -- given the legal activity in basketball and football, it would be an abrogation of the NHLPA's duty to its members not to do so. While the NHL "plaintiffs" attempt to make much of this (see Complaint ¶¶ 41, 47,

5

49), such examination cannot create a justiciable controversy, and simply is irrelevant.  Since the NHLPA utterly lacks the requisite antitrust standing to become an antitrust plaintiff, it cannot be a party-defendant to this declaratory judgment action.  Moreover, whatever the views of the NHLPA, they cannot be attributed to any individual players, including the Named Players, some of whom are not even members of the NHLPA.[2]

It is, of course, possible that a time may come when an NHL player (or players) will so clearly challenge practices of some or all of the NHL "plaintiffs" as being violative of the antitrust laws and attempt to seek damages and other relief. At that time, a justiciable controversy would exist, and only then would it be appropriate for the NHL and its fellow defendants to try to interpose the affirmative defense that the non-statutory labor exemption to the antitrust laws insulates them from antitrust scrutiny.  However, such ripeness does not yet exist.  The NHL's Complaint does nothing more than take this distant and abstract affirmative defense and try to transmute it into a complaint for declaratory relief in a forum which these "plaintiffs" perceive to be "friendly" for them.  The law does not support this type of

---

2. As NHLPA membership does not occur until a player has signed a recognized standard form player contract and has been on an NHL roster for one day or more, two of the Named Players who are presently in college, Brad Wilner and Steve Magnusson, are not even eligible to join the NHLPA.

tactical forum shopping.[3]  Because of the impropriety of this declaratory judgment

action, defendants motion to dismiss should be granted.

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE PRESENT ACTION FOR LACK OF SUBJECT MATTER JURISDICTION

#### A. A Declaratory Judgment Action Requires A Case or Controversy

This Court lacks jurisdiction to issue an advisory opinion under the

guise of a declaratory judgment.  Although the NHL "plaintiffs" cite the federal

antitrust and labor laws as their basis for federal question jurisdiction, they fail to

establish that an actual case or controversy with the defendants exists because, with

regard to the antitrust laws, (i) the NHLPA has no cognizable legal interest adverse to

the NHL and (ii) no Named Player, nor any other current NHL player for that

matter, has been alleged to have any plans or made threats to litigate such issues

against the NHL and its member teams.

---

3.  The NHL and its teams have no right to insist that all players, now and in the
future, must litigate with them only in this forum merely because they perceive the
law in this Circuit to be more favorable to them than elsewhere.  As will be made
plain in defendants' response to the NHL's pending motion for class certification, this
is nothing more than a procedural stunt -- legal legerdemain improperly aimed at
extinguishing the claims of all NHL players for the indefinite future.  Such disregard
for the procedural and substantive rights of other potential litigants should not be
countenanced by this Court.

The Declaratory Judgment Act states: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201.  In interpreting similar language in the 1934 Federal Declaratory Judgment Act, the Supreme Court held that the Act's limitation to "case[s] of actual controversy" "manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense."  Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937).  The Court went on to further define "controversy," stating:

> A "controversy" in this sense must be one that is
> appropriate for judicial determination . . . .  A justiciable
> controversy is thus distinguished from a difference or
> dispute of a hypothetical or abstract character; from one
> that is academic or moot . . . .  The controversy must be
> definite and concrete, touching the legal relations of
> parties having adverse legal interests.  (emphasis
> supplied)

Haworth, 300 U.S. 240-41 (citations omitted).  The Eighth Circuit has similarly held: "A federal court has no power to issue a judgment in a case unless it involves an actual controversy between adverse parties in an adversary proceeding.  No exception is made for declaratory judgments."  Vorbeck v. Schnicker, 660 F.2d 1260, 1265 (8th Cir. 1981), cert. denied, 455 U.S. 921 (1982).  See also Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) ("'[T]he operation of the

8

Declaratory Judgment Act is procedural only.' . . . Congress enlarged the range of

remedies available in the federal courts but did not extend their jurisdiction.");

Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 601 (5th Cir. 1983) ("The

Declaratory Judgment Act . . . confers no jurisdiction but is a procedural device

designed to provide a new remedy to the federal court arsenal.").

       Consequently, if plaintiffs fail to present a justiciable case or

controversy, this Court lacks subject matter jurisdiction and plaintiffs' complaint must

be dismissed.

      **B.**     **No Case or Controversy Exists Between These "Plaintiffs" and the
NHLPA As To Any Putative Antitrust Claims Because the NHLPA
Lacks Standing**

       Courts have consistently dismissed actions brought against improper

defendants. See, e.g., Kurtz v. Baker, 829 F.2d 1133, 1142 (D.C. Cir. 1987)

(defendants lacked ability to remedy plaintiff's alleged damage), cert. denied, 486

U.S. 1059 (1988); Ashenhurst v. Carey, 351 F. Supp. 708, 712-713 (N.D. Ill. 1972)

(defendants not empowered to act under statute and therefore were improper parties to

action challenging constitutionality of statute).  This is just as true in declaratory

judgment actions.  See, e.g., Smith v. Blackwell, 115 F.2d 186, 188 (4th Cir. 1940);

Cafano v. Cimmino, 501 F. Supp. 397, 399 (D. Conn. 1980), aff'd, 636 F.2d 1200

(2d Cir. 1980); Koehler v. Ogilvie, 53 F.R.D. 98, 101-02 (N.D. Ill. 1971), aff'd,

405 U.S. 906 (1972).  The NHL "plaintiffs" cannot seek a declaratory judgment in an

action against a party that lacks an adverse legal interest with respect to the alleged legal controversy.

The NHLPA does not have standing under the antitrust laws to challenge the plaintiffs' conduct, and therefore could not maintain a suit against the NHL "plaintiffs" on antitrust grounds.  See Associated General Contractors v. California State Council of Carpenters, 459 U.S. 519, 540 (1983) (a union "will frequently not be part of the class the Sherman Act was designed to protect, especially in disputes with employers with whom it bargains"); Warth v. Seldin, 422 U.S. 490 (1975); American Federation of Rail Road Police v. Nat'l Rail Road Passenger Corp., 832 F.2d 14, 16 (2d Cir. 1987) (where injury is peculiar to individual, union has no standing to seek damages on behalf of members, citing Warth); Farmers Co-op Co. v. Socony-Vacuum Oil Co., 133 F.2d 101 (8th Cir. 1942); Plumbers & Steamfitters Local 598 v. Morris, 511 F. Supp. 1298, 1307 (E.D. Wash. 1981).  The NHL should be well aware of this, since their lead counsel, Herbert Dym, argued before this very court that the NFLPA did not have standing in Powell, with the result that the NFLPA was dismissed from that case by agreement.

Since the NHLPA is not a proper party, the NHL "plaintiffs" and the NHLPA do not have the requisite adverse legal interest and the NHL and its clubs cannot properly seek declaratory judgment against the NHLPA.

10

The NHL's attempt to put a labor law spin on this "case" is not availing. The allegations relating to the NHLPA's "adversarial and provocative stance" and "unwillingness to engage in collective bargaining," see Complaint at ¶¶ 44-47, even if true, would not, as a matter of law, rise to a case or controversy arising under the antitrust laws. See Section I.C., infra, and cases cited therein. Moreover, such allegations are refuted by the NHL's own pleadings in this case. See Ziegler Affidavit at ¶ 13. The NHL concedes that the NHLPA continues to be interested in and has continued the process of collective bargaining. As to the NHLPA's "adversarial . . . stance," it is only to be expected that the NHL and the NHLPA are adversaries in collective bargaining negotiations. The NHL simply may not be used to encountering vigorous negotiating on behalf of the players. Furthermore, the allegations in paragraphs 44-47 of the Complaint are predicated entirely on the events surrounding the NHL's arbitration request, and are thus mooted by the fact that the NHL said, in the Complaint, that it would withdraw the request. See Complaint at ¶ 45.

To the extent that the NHL and its clubs are or may be subject to the possibility of antitrust damages relating to the continued imposition of its system of player restraints, it is clear that the adverse parties someday may be players -- the persons who would actually be damaged by the NHL's conduct -- not the NHLPA. It

11

therefore follows that only players could properly raise antitrust claims against any NHL restraints of trade, including prohibitions on player movement.

C.   No Case or Controversy Has Even Been Alleged Between the NHL "Plaintiffs" and the Named Players

While it is true that players could sue these plaintiffs at some time for antitrust violations, that is not sufficient to create a justiciable controversy. That some individual players[4] would have standing to raise such claims is but one <u>sine qua non</u> to a declaratory judgment action; more must be established. The NHL "plaintiffs" must also show that the claim is justiciable -- that it is ripe for judicial intervention. Thus, the Court must determine ripeness and whether an "actual" and "substantial" controversy now exists between the NHL "plaintiffs" and the Named Players. As this Circuit has recognized,

---

4. The NHL's allegation that "defendant class" exists is meritless. The seven Named Players are quite a diverse group, including NHL players under contracts of all types and durations, free agents, and two players (still in college) who have yet to play a minute of NHL hockey and are not even members of the NHLPA. The only thing that these players have in common with each other is some contact with the State of Minnesota. Obviously, the entire invented "defendant class" will be even more diverse.

Whether the Named Players are considered individually or as representatives of a "class," interposing them as defendants cannot support that an actual case or controversy exists. The NHL's attempt to pull all present and future players into this case by alleging the existence of an omnibus defendants non-opt out class further exposes their effort to "cover the waterfront" with this litigation.

> The difference between an abstract question and a "controversy" . . . is necessarily one of degree, and it would be difficult if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Vorbeck, 660 F.2d at 1265, quoting Golden v. Zwickler, 394 U.S. 103, 108 (1969); see also Babbit v. United Farm Workers National Union, 442 U.S. 289 (1979); Lake Carriers Ass'n v. MacMullan, 406 U.S. 498 (1972); C.H. v. Sullivan, 718 F. Supp. 726 (D. Minn. 1989) (Rosenbaum, J.), aff'd, 920 F.2d 483 (8th Cir. 1990).

While there is no bright line test for ripeness, courts have indicated at least two factors to be examined. First, the prospect of adverse action against the declaratory judgment plaintiffs must be "certainly impending," Babbitt, 442 U.S. at 298, or "inevitable," Regional Rail Reorganization Act Cases, 419 U.S. 102, 143 (1974); see also Illinois v. General Electric Co., 683 F.2d 206, 210 (7th Cir. 1982), cert. denied, 461 U.S. 913 (1983) (adverse action must be a "virtual certainty"); C.H., 718 F. Supp. at 732. Even a "distinct possibility" of adverse action is not sufficient. General Electric Co., 683 F.2d at 210; Nuclear Engineering Co. v. Scott, 660 F.2d 241, 252-53 (7th Cir. 1981), cert. denied, 445 U.S. 993 (1982).

The NHL "plaintiffs" fail this test.  They do not and cannot allege that legal action on the part of the Named Players is "certainly impending"; they do not even allege that legal action has ever been remotely considered by the Named Players (or any other NHL players).[5]  The reality of the situation is quite different -- given the past history of bargaining, there is a high likelihood that the differences between the NHL and the NHLPA will be resolved through collective bargaining and that legal action will never occur.[6]

The declaratory judgment court must also have before it a concrete factual setting, including actual conduct by the declaratory judgment plaintiffs.  See, e.g., Vorbeck, 660 F.2d at 1265.  Courts will not assume that declaratory judgment plaintiffs will act in a manner which would cause declaratory judgment defendants to initiate suit.  In Vorbeck, the Eighth Circuit dismissed a declaratory judgment action, "refus[ing] to speculate about the kinds of activity the [declaratory judgment] plaintiffs desired to engage in,"  660 F.2d at 1265, citing United Public Workers of America v. Mitchell, 330 U.S. 75, 90 (1947) ("[w]e can only speculate as to the kinds of . . .

---

5. The players will accompany defendants' response to the NHL's class certification motion with irrefutable proof that such legal action is not impending.  Such proof, as opposed to the abstraction of the NHL "plaintiffs" claims, should control.

6. There has never been a strike in the NHL, and only one player out of literally thousands has ever filed an antitrust lawsuit on these player restraint issues against the NHL in the last 15 years.  See McCourt v. California Sports, Inc., 460 F. Supp. 904 (E.D. Mich. 1978), vacated, 600 F.2d 1193 (6th Cir. 1979).

14

activity the [declaratory judgment plaintiffs] desire to engage in"). <u>See also</u> <u>Williams Pipe Line</u> v. <u>City of Mounds View</u>, 704 F. Supp. 914, 919 (D. Minn. 1989) (case "not ripe for review without concrete factual setting"); <u>C.H.</u>, 718 F. Supp. at 734 (case ripe which "needs no further factual development").

The NHL "plaintiffs" fail to satisfy this second test because of the premature and preemptive nature of this litigation. The NHL's allegations regarding their own future activities are speculative by definition. When the Complaint was filed, the 1988 Agreement was still in effect and the NHL and NHLPA were actively engaged in collective bargaining. Perhaps the NHL and its clubs, between now and the hearing, intend to engage in actual activity to dilute the speculative nature of this suit; if so, that would just highlight the premature nature of this litigation. The NHL "plaintiffs" are, in effect, using the filing of this Complaint to hold their place in line at the steps of the courthouse of their choice -- with only 110 forum-shopping days left before their hoped-for early Christmas at these hearings.

Based on the foregoing, it is clear that no case or controversy exists between the NHL "plaintiffs" and the Named Players, much less a dispute implicating the putative defendant class of all players. The Court must therefore dismiss the Complaint for want of subject matter jurisdiction.

**II.     EVEN IF THE COURT HAD JURISDICTION OVER ALL OR PART OF THE NHL'S CLAIMS, THE COURT SHOULD EXERCISE ITS DISCRETION AND DISMISS THE ACTION**

A.     Exercise of Jurisdiction is a Matter of Discretion

There is no absolute right to a declaratory judgment, which is equitable in nature.  Assuming arguendo that jurisdiction might exist, it is within the discretion of the court to refrain from exercising its jurisdiction in a declaratory judgment action.  See Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942); Twin City Fed. Sav. and Loan Ass'n v. Gelhar, 525 F. Supp. 802, 804 (D. Minn. 1981), aff'd, 681 F.2d 528 (8th Cir. 1982); Travelers Indemnity Co. v. Winmill, 294 F. Supp. 394, 396-97 (D. Minn. 1968).  In making this determination, the Court has the duty to properly balance the plaintiffs' need for declaratory relief against the consequences of granting the desired relief.  See Eccles v. Peoples Bank, 333 U.S. 426, 431 (1948).  According to one frequently cited authority:

> "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issues, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."

Alsager v. District Court, 518 F.2d 1160, 1163-64 (8th Cir. 1975), quoting E. Borchard, Declaratory Judgments 299 (2d ed. 1941).

16

The courts have long recognized that declaratory actions are to be allowed sparingly.

> There is . . . an implied recognition that declaratory judgment actions are a special breed of lawsuit, intended to fill a gap in the remedies otherwise available but not to be substituted for the "real" thing when a coercive suit can be brought.

Travelers Indem. Co. v. Boles, 503 F. Supp. 179, 181 (N.D. Cal. 1980), aff'd, 673 F.2d 1340 (9th Cir. 1982).

B.   The Court Should Exercise Its Discretion And Dismiss This Action As Fostering Improper Tactical Forum Shopping

Courts have consistently rejected efforts as these by declaratory judgment plaintiffs to engage in forum shopping or similar procedural fencing. "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum." Tempco Elec. Heater Corp. v. Omega Eng'g, 819 F.2d 746, 750 (7th Cir. 1987), quoting American Auto. Ins. Co. v. Freundt, 103 F.2d 613, 617 (7th Cir. 1939). Similarly,

> When a party files a declaratory judgment action for the purposes of "procedural fencing," a court should exercise its discretion and dismiss the case. . . . The Act's remedy should not be utilized for the purpose of anticipating the trial of an issue in a court of coordinate jurisdiction. . . . Moreover, the declaratory remedy is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat the other party to the courthouse.

17

Casualty Idem. Exchange v. High Croft Enter., 714 F. Supp. 1190, 1193 (S.D. Fla. 1989). See also Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1225 (3rd Cir. 1989); Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th Cir. 1967), cert. denied, 389 U.S. 1039 (1968); Van-Fuel Inc. v. Dep't of the Treasury, 673 F.2d 1194, 1195 (11th Cir. 1982); Board of Regents v. MSE Corp., 1990 U.S. Dist. LEXIS 17344 at 12-13 (W.D. Mo. Nov. 20, 1990) (clearly improper to use declaratory judgment action for procedural advantage).

In the present case, the NHL has raced to this Court, filing its action prior to the time that any antitrust damage claim arising under the continued operation of the NHL's free agency and related rules has ripened. It appears clear that the NHL's intention in this action is to deprive individual players of their rights to choose the fora or forum and the timing for bringing their damage claims. This is clearly improper.

Injured parties traditionally are allowed to control the timing and forum of the litigation. See, e.g., Hanes Corp. v. Millard, 531 F.2d 585, 592-3 (D.C. Cir. 1976) ("The anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure. It deprives the plaintiff of his traditional choice of forum and timing and it provokes a disorderly race to the courthouse."); State Farm Fire and Cas. Co. v. Taylor, 118 F.R.D. 426, 429-30 (M.D.N.C. 1988) (use of a declaratory judgment action to anticipate defenses to other litigation is improper because it

18

"deprives the plaintiff of his traditional choice of forum and timing and it provokes a disorderly race to the courthouse."); State Farm Fire and Cas. Co. v. Poomaihealani, 667 F. Supp. 705, 707 (D. Haw. 1987) ("the injured party should be allowed to control her own case.").

This rule is given even greater weight in antitrust cases. See, e.g., United States v. National City Lines, 334 U.S. 573, 581 (1948); State of West Virginia v. Morton Int'l Inc., 264 F. Supp. 689, 691 (D. Minn. 1987); Adams Dairy Co. v. National Dairy Products Corp., 293 F. Supp. 1135, 1143 (W.D. Mo. 1968).

The NHL "plaintiffs'" declaratory judgment action is a classic example of preemptive forum shopping: they have brought this putative defendant class action in this Court solely because this Circuit has law which they believe is advantageous to them.[7] See Powell v. National Football League, 930 F.2d 1293 (8th Cir. 1990), cert. denied, 111 S. Ct. 711 (1991).

Courts are properly skeptical about the propriety and necessity of declaratory relief where a declaratory action has been filed in anticipation of another action. See, e.g., Gelhar, 525 F. Supp at 804 ("Where declaratory relief is sought to

---

7. It is clearly not Minnesota's scant factual relationship to the action which attracted the NHL to this Court. This further reveals the forum-shopping nature of this action. See, e.g., Columbia Pictures Indus., Inc. v. Schneider, 435 F. Supp. 742, 746-47 (S.D.N.Y. 1977) ("A litigant is open to the charge of forum shopping [when] he chooses a forum with slight connection to the factual circumstances surrounding his suit."), aff'd, 573 F.2d 1288 (2d Cir. 1978).

19

anticipate the trial of an issue in a court of coordinate jurisdiction, the court's discretion to entertain the action should not be exercised."); Terra Nova, 887 F.2d at 1225 ("In conducting this inquiry, '[c]ourts look with disapproval upon any attempt to circumvent the laudable purposes of the Act, and seek to prevent the use of the declaratory judgment action as a method of procedural fencing or as a means to provide another forum in a race for res judicata.'"); Factors, Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 219 (2nd Cir. 1978), cert. denied, 440 U.S. 980 (1979) (in affirming the dismissal of the declaratory action, the court, quoting Justice Brennan, Perez v. Ledesma, 401 U.S. 82, 119, n.12 (1971) (Brennan, J., dissenting), stated "the federal declaratory judgment is not a prize to the winner of a race to the courthouse."); Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th Cir. 1967), cert. denied, 389 U.S. 1039 (1968) (district court may properly consider fact that claim for declaratory judgment was filed in anticipation of action for damages); Chicago Furniture Forwarding Co. v. Bowles, 161 F.2d 411, 413 (7th Cir. 1947) (noting that the issue presented was whether "the circumstances at the time of the determination are such as to make further prosecution of the suit for declaratory relief useless.").[8]  The Court's skepticism should be heightened, where, as here, the case

---

8.  The "first to file" cases follow a similar logic.  See Tempco Elec., 819 F.2d at 764 ("The cost [of the first to file rule] — a rule which will encourage an unseemly race to the courthouse and, quite likely, numerous unnecessary suits -- is simply too

(continued...)

has been concocted by means of a transparently frivolous misuse of the class action device coupled with a claim against a party with no standing to even threaten antitrust litigation.

The Complaint should be dismissed as the result of an unseemly exercise of procedural fencing by the NHL to deprive potential individual plaintiffs of their rights to selection of forum and timing.  This case is simply not a proper declaratory judgment action.

## CONCLUSION

This Court should not place its imprimatur on plaintiffs' ill-conceived preemptive strike, which seeks to ensure a forum in the Eighth Circuit for any possible future litigation involving the NHL, its member clubs and present or future NHL players.  Plaintiffs' transparent forum shopping -- coupled with the facts that no real case or controversy exists, no concrete facts are alleged, no appropriate parties are named, and with the result of depriving players of their rights to choose timing and forum should a controversy ever ripen -- should be stopped in its tracks.  The

---

8.  (...continued)
high."); CNA Fin. Corp. v. Home Indem. Co., 703 F. Supp. 759, 761 (N.D. Ill. 1989) ("The fact that the declaratory judgment action was filed here first is of no relevance.  Courts should not reward the winner of a footrace to the courthouse or a party who engages in a preemptive litigation strike."); Taylor, 118 F.R.D. at 430, quoting Board of Educ. v. HEW, 396 F. Supp. 203, 250 (S.D. Ohio 1975) ("the right to maintain a declaratory judgment action does not depend on which party filed suit first."), aff'd in part, rev'd in part on other grounds, 532 F.2d 1070 (6th Cir. 1976).

"race to the courthouse" by the NHL should be called back because of a false start.
This is clearly not what the Declaratory Judgment Act was intended to achieve nor is
it the kind of case this or any Court, in its discretion, should expend its valuable
resources to decide.

For the above reasons, defendants respectfully request that the Court
dismiss the Complaint.

Dated:  November _15_, 1991

LINDQUIST & VENNUM

By: _____
Edward M. Glennon, #35403
Carol T. Rieger, #154568
Luke H. Terhaar, #178636
Charles J. Lloyd, #174257
4200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402
(612) 371-3211

WEIL, GOTSHAL & MANGES

By: _____
James W. Quinn
Peter Gruenberger
Gregory S. Shatan
767 Fifth Avenue
New York, New York  10153
(212) 310-8000

ATTORNEYS FOR DEFENDANTS

22

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

|  |  |
|---|---|
| National Hockey League, et al., | Civil Action No. 4-91-636 |
| Plaintiffs, | |
| v. | |
| National Hockey League Players Association, and Robert S. Gavin, et al., | **ORDER** |
| Defendants. | |

A hearing was held in the above-entitled actio before the undersigned United States Judge on December 13, 1991 on defendants' motion to dismiss pursuant to F.R.C.P. 12(b)(1) and (6).  Plaintiffs were represented by Herbert Dym, Gregg Levy and Gary Haugen.  Defendants were represented by James W. Quinn, Peter Gruenberger, Edward M. Glennon and Carol T. Rieger.  Based upon all of the filings and proceedings herein, the Court finds that it lacks proper subject matter jurisdiction over this action and that the plaintiffs have failed to state a proper claim for declaratory judgment.  Accordingly,

IT IS ORDERED THAT:

1.    The defendants' motion is granted; and

2.    Plaintiffs' action is hereby dismissed in its entirety.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:_____, 19____.    _____

James M. Rosenbaum
U.S. District Court Judge