UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL BASKETBALL ASSOCIATION, et al.,

          Plaintiffs,

vs.

NATIONAL BASKETBALL PLAYERS ASSOCIATION, et al.,

          Defendants.

11 Civ. 5369 (PGG)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS FOR
<u>LACK OF SUBJECT MATTER JURISDICTION</u>**

Howard L. Ganz
Howard Z. Robbins
**PROSKAUER ROSE LLP**
11 Times Square
New York, New York  10036
Telephone:  (212) 969-3035
Facsimile:  (212) 969-2900
hganz@proskauer.com
hrobbins@proskauer.com

Jeffrey A. Mishkin
Anthony J. Dreyer
**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP**
Four Times Square
New York, New York  10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
jeffrey.mishkin@skadden.com
anthony.dreyer@skadden.com

Richard W. Buchanan
**NATIONAL BASKETBALL ASSOCIATION**
645 Fifth Avenue
New York, New York  10022
Telephone:  (212) 407-8000
Facsimile:  (212) 888-7931
rbuchanan@nba.com

Of Counsel:  Paul D. Clement (admitted *pro hac vice*)
**BANCROFT PLLC**
1919 M Street, N.W., Suite 470
Washington, D.C.  20036
Telephone:  (202) 234-0090
Facsimile:  (202) 234-2806
pclement@bancroftpllc.com

*Attorneys for Plaintiffs*

## *Table of Contents*

Table of Authorities ...................................................................................................................ii

Preliminary Statement ...............................................................................................................1

Argument ...................................................................................................................................3

I.   While Threats Of Litigation Are Not A Prerequisite To Justiciability, The NBPA Has Threatened To Disclaim Interest In Further Collective Bargaining And To Challenge The Lockout As An Antitrust Violation............................................................5

II.  Courts Do Not Apply A Different Subject Matter Jurisdiction Analysis In The Context Of Collective Bargaining ................................................................................10

III. Defendants' Accusation About Forum Shopping Further Demonstrates The Existence Of A Case Of Actual Controversy Between The Parties........................................14

Conclusion ...............................................................................................................................16

## *Table of Authorities*

### *Cases*

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) ................................................................................... 2

*Associated General Contractors of Cal., Inc. v. California State Council of Carpenters*,
    459 U.S. 519 (1983) ............................................................................................................. 12

*Atlas Air, Inc. v. Air Line Pilots Ass'n*, 232 F.3d 218 (D.C. Cir. 2000) ...................................... 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 2

*Blackman v. Hadron, Inc.*, 450 F.2d 781 (2d Cir. 1971) .............................................................. 13

*Bridgeman v. National Basketball Ass'n*, 675 F. Supp. 960 (D.N.J. 1987) ......................... 4, 9, 13

*Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998 (2d Cir. 1969) ...................................... 13

*Carlin Equities Corp. v. Offman*, No. 07 Civ. 359 (SHS), 2007 WL 2388909 (S.D.N.Y.
    Aug. 21, 2007) .................................................................................................................. 6, 13

*In re Casino de Monaco Trademark Litig.*, No. 07 Civ. 4802 (DAB), 2010 WL 1375395
    (S.D.N.Y. Mar. 31, 2010) ................................................................................................. 6, 14

*Cosa Instrument Corp. v. Hobré Instruments BV*, 698 F. Supp. 2d 345 (E.D.N.Y. 2010) ...... 6, 13

*D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768 (D. Md. 2009) ............................................. 14

*Ewing v. National Basketball Ass'n*, No. 95-cv-00411-DSD-JGL (D. Minn. July 11,
    1995) ................................................................................................................................... 4, 9

*Federal Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961 (D.C. Cir. 1995) ........................... 11

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581 (S.D.N.Y. 1990) ......................... 3

*Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358 (Fed. Cir. 2009) ................................... 14

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977) ..................................... 12

*Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556 (2d Cir.), *cert. denied*, 501
    U.S. 1218 (1991) ............................................................................................................. 6, 13

*Kos Pharms., Inc. v. Barr Labs., Inc.*, 242 F. Supp. 2d 311 (S.D.N.Y. 2003) ............................. 13

*Lanier v. National Basketball Ass'n*, No. 82-Civ. 4935 (S.D.N.Y. July 28, 1982) .............. 4, 9, 12

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ..................................... 3, 10

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) .................................................. 3, 5, 10

*National Basketball Ass'n v. SDC Basketball Club, Inc.*, 815 F.2d 562 (9th Cir. 1987) ............... 6

*National Hockey League v. National Hockey League Players Ass'n*, 789 F. Supp. 288 (D. Minn. 1992) .................................................................................................................. 11, 12, 13

*National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 166 F. Supp. 2d 1155 (E.D. Mich. 2001) ............................................................................................. 12

*New York ex rel Spitzer v. Cain*, 418 F. Supp. 2d 457 (S.D.N.Y. 2006) ....................................... 8

*North Am. Airlines, Inc. v. International Bhd. of Teamsters*, No. 04 Civ. 9949 (KMK), 2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) .......................................................... 10, 11

*Perez v. Ledesma*, 401 U.S. 82 (1971) ..................................................................................... 15

*Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329 (Fed. Cir. 2008) .................................... 14

*RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10 Civ. 25 (PGG), 2011 WL 3251554 (S.D.N.Y. July 28, 2011) ........................................................................... 3, 5

*Robertson v. National Basketball Ass'n*, 72 F.R.D. 64 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 682 (2d Cir. 1977) ............................................................................................................. 4, 9

*Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374 (7th Cir. 1987) .................................................................................................................. 12

*United States v. Malik*, 16 F.3d 45 (2d Cir. 1994) ...................................................................... 8

*Warth v. Seldin*, 422 U.S. 490 (1975) ...................................................................................... 12

*Wells Fargo Bank, N.A. v. Sharma*, 642 F. Supp. 2d 242 (S.D.N.Y. 2009) ............................. 6, 7

**<u>Statutes</u>**

15 U.S.C. § 26 .......................................................................................................................... 12

28 U.S.C. § 2201(a) ................................................................................................................... 3

Fed. R. Civ. P. 8(a)(2) ................................................................................................................ 2

## *Preliminary Statement*

Plaintiffs National Basketball Association and its thirty member teams (collectively the "NBA" or "League") submit this memorandum of law in opposition to the motion of defendants National Basketball Players Association (the "NBPA" or "Union"), Derek Fisher, Keyon Dooling, James Jones, Matt Bonner, Maurice Evans, Roger Mason, Jr., Chris Paul, Theo Ratliff, Etan Thomas, Amar'e Stoudemire, Mike Dunleavy, James Fredette, and Charles Jenkins (collectively "defendants") to dismiss the declaratory judgment complaint for lack of subject matter jurisdiction.

Contrary to defendants' assertion, the NBA's complaint sets forth a definite and concrete case of actual controversy that this Court may adjudicate without resort to hypothetical facts: is the lockout that the NBA instituted in support of its bargaining position on July 1, 2011, lawful under the antitrust laws, regardless of whether the NBPA decertifies or disclaims interest in representing the players in further collective bargaining? (Compl. ¶¶ 1, 52, 61, 65, 70.) The NBA contends that the antitrust legality of the lockout is unaffected by the NBPA's threatened decertification or disclaimer of interest, and has set forth in its complaint several legal theories in support of that contention. (Compl. ¶¶ 8-11, 50, 54-59, 63, 67, 68.) The NBPA presents a starkly different view. It asserts that the antitrust legality of the lockout depends on the whim of the Union, and that the Union can, by its own unilateral act, convert the lockout into a violation of the antitrust laws at any time it chooses by decertifying or disclaiming interest in further collective bargaining. (Compl. ¶¶ 4, 7, 37-42.) This real and substantial controversy is having an immediate impact on the League and the collective bargaining process. (Compl. ¶¶ 1, 43.)

Defendants ignore the actual controversy on which the NBA has predicated its complaint – the antitrust lawfulness of the ongoing lockout – and instead focus their ripeness attack on what they characterize as "a theoretical union disclaimer of representation rights fol-

lowed by antitrust litigation." (Def. Br. at 7.) But the NBA is not challenging a "theoretical union disclaimer." The case of actual controversy here is not the legality or effectiveness of the *Union*'s future acts, whatever they might be. The case of actual controversy here is the antitrust legality of the *NBA*'s ongoing act – its player lockout, which it instituted in the context of a collective bargaining relationship under the federal labor laws in support of its bargaining position – and whether the NBA's labor law right to lock out the players is, as defendants claim, an illusory one because of defendants' asserted right to decertify or disclaim. There is nothing theoretical or speculative about the NBA's lockout or the parties' dispute about its legality under the antitrust laws. That controversy exists right now, and it is definite, concrete and justiciable.[1]

To support their motion to dismiss, defendants essentially make a two-pronged argument. They argue that (i) as a matter of fact, they have not threatened to decertify or disclaim interest in further collective bargaining and to commence antitrust litigation if they are dissatisfied with their success at the bargaining table, and (ii) as a matter of law, even if they have made such threats, threats made in the context of collective bargaining are somehow never sufficient to create a case of actual controversy and establish a justiciable dispute. Defendants are wrong on both points. While threats of litigation (which defendants have unquestionably made) are sufficient to demonstrate the existence of a justiciable case of actual controversy, they are not a legal prerequisite. And, contrary to defendants' assertion, the context of collective bargaining

---

[1] Contrary to defendants' argument, the complaint pleads sufficient facts to withstand a motion to dismiss under *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The complaint pleads that the NBA instituted a lockout on July 1, 2011, in support of its bargaining position in the ongoing collective bargaining negotiations with the NBPA, and that the parties dispute the lawfulness of that lockout under the antitrust laws. No further factual allegations are necessary to satisfy Rule 8 of the Federal Rules of Civil Procedure, which requires merely "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

2

does not preclude a threat of a legal challenge to current conduct from creating a justiciable dispute that may be resolved by declaratory judgment.

Accordingly, as demonstrated below, this Court has subject matter jurisdiction over this declaratory judgment action, and defendants' motion to dismiss should be denied.

### *Argument*

The Court has subject matter jurisdiction over this case.  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  As the Supreme Court has explained, the phrase "case of actual controversy" in the Act "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the United States Constitution.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  The basic question in assessing whether there is a "case of actual controversy" is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.*  (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The intent of the Declaratory Judgment Act "is to allow a party to be free from the whim of its opponent in deciding when to resolve the legal dispute between them."  *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 585 (S.D.N.Y. 1990).  As this Court has written, in determining whether declaratory relief is warranted, "[t]he court must consider whether a declaratory judgment will (1) 'serve a useful purpose in clarifying and settling the legal relations in issue;' or (2) 'afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"  *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10 Civ.

3

25 (PGG), 2011 WL 3251554, at *15 (S.D.N.Y. July 28, 2011) (alteration in original) (citations omitted).

Here, there is a substantial controversy between parties having adverse legal interests. The NBA has imposed a player lockout in connection with the ongoing collective bargaining negotiations and contends that its lockout is lawful under the antitrust laws. The NBPA maintains that, if at any point it is dissatisfied with the course of collective bargaining negotiations, it may disclaim interest in further negotiations and proceed to challenge the lockout as a violation of the antitrust laws. Further, the controversy is sufficiently immediate and real. The NBPA has threatened the disclaimer tactic throughout the parties' collective bargaining negotiations (Compl. ¶¶ 4, 7, 37-42; Silver Decl.[2] ¶¶ 4-28), has already obtained express player authorization to pursue its antitrust strategy at any time (Compl. ¶ 39; Silver Decl. ¶¶ 13, 18), and has repeatedly filed antitrust litigation in the past under similar circumstances. (Buchanan Decl.[3] ¶¶ 4-22.)[4] Indeed, earlier this year, Mr. Kessler employed precisely the same strategy on behalf of his other client, the NFL Players Association (Compl. ¶ 41; Buchanan Decl. ¶ 23; Silver Decl. ¶¶ 14-18), and has made a point of reminding the NBA of the status of that strategy during bargaining sessions between the NBPA and the NBA. (Silver Decl. ¶¶ 19-21.)

---

[2] Declaration of Adam Silver In Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, executed on October 10, 2001 and submitted herewith ("Silver Decl.").

[3] Declaration of Richard W. Buchanan In Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, executed on October 10, 2001 and submitted herewith ("Buchanan Decl.").

[4] *See, e.g.*, *Robertson v. National Basketball Ass'n*, 72 F.R.D. 64 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 682 (2d Cir. 1977); *Lanier v. National Basketball Ass'n*, No. 82-Civ. 4935 (S.D.N.Y. July 28, 1982); *Bridgeman v. National Basketball Ass'n*, 675 F. Supp. 960 (D.N.J. 1987); *Ewing v. National Basketball Ass'n*, No. 95-cv-00411-DSD-JGL (D. Minn. July 11, 1995).

Defendants themselves demonstrate that subject matter jurisdiction exists in this case when they charge the NBA with forum shopping, conceding that, as part of their disclaimer tactic, they are reserving the right to challenge the antitrust legality of the NBA's lockout at a time and place of their own choosing. Defendants even refer to themselves as the "actual plaintiffs' and to the NBA as the "preemptive plaintiffs" (Def. Br. at 24) – which simply underscores that the parties are engaged in an actual, live controversy that may properly be resolved now under the Declaratory Judgment Act. A grant of declaratory relief would serve a useful purpose in clarifying and settling the legal relations in issue, *RJ Capital*, 2011 WL 3251554, at \*15, by removing a serious impediment to the ability of the parties to reach a new collective bargaining agreement. A ruling from this Court would also afford relief from the controversy by resolving the parties' ongoing disagreement about the application of the antitrust laws to the NBA's lockout. *Id.*

## I. While Threats Of Litigation Are Not A Prerequisite To Justiciability, The NBPA Has Threatened To Disclaim Interest In Further Collective Bargaining And To Challenge The Lockout As An Antitrust Violation

As a matter of law, a declaratory judgment defendant need not have threatened litigation for there to exist a justiciable case of actual controversy between the parties. In *MedImmune*, the Supreme Court held that subject matter jurisdiction existed over a patent licensee's declaratory judgment action regarding the validity of a patent, even though the plaintiff had continued to pay royalties under the patent license and thus there was no likelihood of suit by the defendant patent licensor. The Court explained that, although the threat of a lawsuit would be sufficient to establish a case of actual controversy, a plaintiff need not risk a possible lawsuit by refusing to pay the contested royalties before seeking a declaration of its legal rights. 549 U.S. at 128, 134. Thus, *MedImmune* establishes that it is the controversy as to the parties' respective

5

legal rights, and not the threat of a lawsuit over those rights, that satisfies the Article III case or controversy requirement and confers subject matter jurisdiction over a declaratory judgment action. *Accord In re Casino de Monaco Trademark Litig.*, No. 07 Civ. 4802 (DAB), 2010 WL 1375395, at *9 (S.D.N.Y. Mar. 31, 2010) ("a threat of suit is not necessary to declaratory judgment jurisdiction").

Even a declaratory judgment defendant's assertion that it has no present intention to sue, or has not decided whether to sue, does not defeat the existence of a justiciable case of actual controversy. *See, e.g.*, *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 563 (2d Cir.) (unless the defendant has entered into a binding, judicially enforceable agreement not to bring suit, a mere representation that it does not intend to sue is insufficient to deprive the court of subject matter jurisdiction over a declaratory judgment action), *cert. denied*, 501 U.S. 1218 (1991); *Cosa Instrument Corp. v. Hobré Instruments BV*, 698 F. Supp. 2d 345, 350 (E.D.N.Y. 2010) (having threatened litigation, "Hobré may not now escape a declaratory judgment by claiming that, at least for the time being, it has decided not to pursue legal remedies against the Plaintiffs"); *Carlin Equities Corp. v. Offman*, No. 07 Civ. 359 (SHS), 2007 WL 2388909, at *3 (S.D.N.Y. Aug. 21, 2007) (representation that defendant does not intend to sue is insufficient to deprive the court of subject matter jurisdiction over a declaratory judgment action); *see also National Basketball Ass'n v. SDC Basketball Club, Inc.*, 815 F.2d 562, 566 (9th Cir. 1987) ("This is the type of Damoclean threat that the Declaratory Judgment Act is designed to avoid.").

Because threats of imminent litigation are not necessary to confer subject matter jurisdiction over a declaratory judgment action, defendants' claim that they have not decided whether to disclaim interest in collective bargaining and challenge the lockout under the antitrust laws is beside the point. This is made clear, for example, by *Wells Fargo Bank, N.A. v. Sharma*,

6

642 F. Supp. 2d 242 (S.D.N.Y. 2009), in which Wells Fargo sought a declaration that its contract with the defendant was valid and not subject to rescission. The defendant moved to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that, although he had the right to rescind the contract, no actual controversy existed because he had not yet decided whether to exercise that right. *Id.* at 245-46. Judge Rakoff held that, having reserved his right to rescind the contract whenever he chose to do so (exactly as defendants here have reserved their right to disclaim and bring an antitrust suit whenever they choose to do so), the defendant had "amply called into question the enforceability of the Swap Agreement, thus giving rise to an actual controversy between the parties." *Id.* at 246. After rejecting the defendant's argument that the complaint, "in essence, amount[ed] to an improper attempt to preemptively use the Declaratory Judgment Act to obtain a declaration of non-liability as to defendant's tort claims," Judge Rakoff concluded: "In short, because the legal relation between the parties is uncertain, and a judgment in this action would clarify and settle any uncertainty, insecurity, or controversy surrounding the validity and enforceability of the Swap Agreement, the instant declaratory judgment action may stand." *Id.* at 247 (citation omitted).

While threats of litigation are not necessary for the existence of a justiciable controversy, they are certainly sufficient. In this case, the NBPA has made it clear that it views union disclaimer and an antitrust challenge to the lockout as an option that it may use at any time it chooses. As the NBA has alleged in its complaint (Compl. ¶¶ 1, 4, 7, 37-42), and as Adam Silver, Deputy Commissioner of the NBA, testifies in the accompanying declaration (Silver Decl. ¶¶ 4-28), the NBPA has repeatedly threatened to use antitrust litigation challenging the NBA's lockout as a lever to extract more favorable terms and conditions of employment in the collective bargaining negotiations. Although defendants now claim that they have not yet decided whether

7

<mark><mark><mark><mark><mark><mark><mark><mark></mark></mark></mark></mark></mark></mark></mark></mark>

or when to employ their antitrust litigation strategy, they have made clear their intention to create uncertainty and insecurity with respect to the lawfulness of the lockout, telling the NBA during negotiations that "[t]here is uncertainty in the air and sometimes uncertainty is a helpful fact." (Silver Decl. ¶ 22.) But the clarification and resolution of such uncertainty, insecurity, or controversy is the precise purpose for the Declaratory Judgment Act. By reserving their alleged right to disclaim and to challenge the lockout under the antitrust laws, defendants here, like the defendant in *Wells Fargo*, have amply called into question the antitrust legality of the lockout, thus giving rise to an actual controversy between the parties.

The NBPA quibbles with the characterization of its strategy as a "threat," but – however politely delivered – the message the NBPA has conveyed to the NBA is clear: if the Union is not successful in the collective bargaining room, it will disclaim and proceed to the antitrust courtroom. "'An absence of explicitly threatening language does not preclude the finding of a threat.' Where there is 'sufficient extrinsic evidence' such that 'an ordinary and reasonable recipient familiar with the context of the [communication] would interpret it as a threat,' then the question of whether it is a threat or not is one of fact, not of law." *New York ex rel Spitzer v. Cain*, 418 F. Supp. 2d 457, 476 (S.D.N.Y. 2006) (quoting *United States v. Malik*, 16 F.3d 45, 49-50 (2d Cir. 1994)). And the undeniable facts in this case, as set forth in the complaint and in the declaration of Adam Silver, demonstrate that defendants have, in fact, threatened to disclaim and bring antitrust litigation against the ongoing lockout if they are dissatisfied with the negotiations at the bargaining table.[5]

---

[5] As Mr. Silver testifies (Silver Decl. ¶ 7), the NBPA has delivered its antitrust strategy message both in person during bargaining sessions and through the media, a common means by which labor and management communicate with their respective constituencies and with each other.

The NBPA's ability and willingness to follow through on its threat to disclaim and to challenge the lockout under the antitrust laws cannot be doubted. The NBPA has already obtained express player authorization to pursue its antitrust strategy at any time. (Compl. ¶ 39.) As defendants themselves concede in their brief in support of the motion to dismiss, the collection of the authorization cards "puts the NBPA in the position to consider one of its legitimate legal options if, in the future, the NBPA ever decides to exercise its members' labor law rights not to be represented by a union." (Def. Br. at 20.) And the NBPA has repeatedly filed antitrust litigation in the past when it has been dissatisfied with the course of collective bargaining negotiations. *See*, *e.g.*, *Robertson v. National Basketball Ass'n*, 72 F.R.D. 64 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 682 (2d Cir. 1977); *Lanier v. National Basketball Ass'n*, No. 82-Civ. 4935 (S.D.N.Y. July 28, 1982); *Bridgeman v. National Basketball Ass'n*, 675 F. Supp. 960 (D.N.J. 1987); *Ewing v. National Basketball Ass'n*, No. 95-cv-00411-DSD-JGL (D. Minn. July 11, 1995). (*See* Buchanan Decl. ¶¶ 4-19.) Indeed, earlier this year, the NBPA's counsel, Mr. Kessler, employed precisely the same strategy on behalf of his other client, the NFL Players Association (Compl. ¶ 41), and reminded the NBA of the status of that strategy during bargaining sessions between the NBPA and the NBA. (Silver Decl. ¶¶ 14-21.)

In the face of the NBPA's clear message to the NBA that the Union and the players view an antitrust challenge to the NBA's lockout as a viable option to be pursued in earnest at any moment they choose – a message that NBPA executive director G. William Hunter repeats in his declaration in support of the motion to dismiss (Hunter Decl. ¶ 4 ("Disclaimer and antitrust litigation are well-known options available to all player unions") – the NBPA's assertion that it has not yet decided whether and when to pursue such an antitrust challenge is irrelevant. Indeed, under *Kidder, Peabody*, even if the NBPA and its members were now to pledge to forego anti-

9

trust litigation – which they have not done – this Court would still have subject matter jurisdiction to enter a declaratory judgment resolving the issue of the lockout's legality under the antitrust laws.

### II. Courts Do Not Apply A Different Subject Matter Jurisdiction Analysis In The Context Of Collective Bargaining

There is no collective bargaining exception to Article III's case or controversy requirement. Contrary to defendants' argument, the test for subject matter jurisdiction in the context of collective bargaining is no different than the test for subject matter jurisdiction in any other context – "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Cas. Co.*, 312 U.S. at 273). Defendants themselves acknowledge the flaw in their argument when they assert that "the *Maryland Casualty* test is what the *NHL v. NHLPA* court expressly applied." (Def. Br. at 14.) On this point, defendants are correct: there is no other legal test that applies specially in the context of collective bargaining.

The cases that defendants cite do not establish otherwise. For example, in *North American Airlines, Inc. v. International Brotherhood of Teamsters*, No. 04 Civ. 9949 (KMK), 2005 WL 646350, at *7-*8 (S.D.N.Y. Mar. 21, 2005), the court, relying on *Maryland Casualty*, held that, because the legality of changes in working conditions under the Railway Labor Act (the "RLA") depends at least in part on the intent of the employer when implementing those changes, the question of whether North American could unilaterally implement changes to its employees' working conditions during the pendency of collective bargaining negotiations required a fact-specific inquiry that could not be accomplished unless North American "finalize its

10

position regarding the specifics of the unilateral changes." *Id.* at *7-*11. But unlike North American, the NBA has finalized its position with respect to the player lockout, which is real and ongoing. A justiciable dispute as to the antitrust legality of that lockout is therefore ripe for adjudication.

The decisions in *Atlas Air, Inc. v. Air Line Pilots Ass'n*, 232 F.3d 218 (D.C. Cir. 2000), and *Federal Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961 (D.C. Cir. 1995), are similarly distinguishable. In each case, the employer airline sought a declaratory judgment that it could lawfully implement future, unspecified changes to its pilot-employees' working conditions under the RLA and, in each case, the court held that, absent specific proposed changes to consider, there was no ripe dispute between the parties. *Atlas Air*, 232 F.3d at 227 ("the district court correctly dismissed Atlas's additional claims for lack of subject matter jurisdiction on the grounds that it 'must not speculate as to future unilateral changes Atlas may wish to make and whether those changes would be lawful under the RLA'"); *Federal Express*, 67 F.3d at 962 (since the union "did not oppose the changes [FedEx had] already implemented, and since FedEx had proposed no future changes, there was no concrete legal dispute," and the district court properly held that "the case was not justiciable in the absence of an actual controversy between the parties"). By contrast, the NBA's lockout has been implemented, and the dispute as to its legality under the antitrust laws is concrete and real.

Defendants' lengthy reliance on *National Hockey League v. National Hockey League Players Ass'n*, 789 F. Supp. 288 (D. Minn. 1992), is also misplaced. That decision is inconsistent with Supreme Court and Second Circuit precedent, and should be disregarded. For example, the decision is premised, in part, on the erroneous view that the union lacked standing to bring a coercive antitrust action and that the court therefore lacked subject matter jurisdiction

11

to entertain a declaratory judgment action against the NHLPA. *Id.* at 293. But the Supreme Court's decision in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983), on which the Minnesota district court relied but misapplied, drew a distinction between actions for damages and actions for injunctive relief, and did not decide that a union lacked antitrust standing to seek injunctive relief under the antitrust laws. *Id.* at 524 n.5 ("Plaintiffs do not seek injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, and they do not ask us to consider whether they have standing to request such relief."). As a matter of law, a union "has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted not the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *accord Warth v. Seldin*, 422 U.S. 490, 501 (1975) (trade associations or other organizations can seek injunctive or other equitable relief on behalf of their members); *National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 166 F. Supp. 2d 1155, 1166-67 (E.D. Mich. 2001) (holding that the NHLPA had standing to pursue an antitrust injunction on behalf of its players, and explaining that "federal courts have recognized an association's standing to maintain an antitrust action seeking injunctive relief on behalf and as the representative of its members") (quoting *Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1380 (7th Cir. 1987) (collecting cases). Accordingly, contrary to defendants' argument, this Court has subject matter jurisdiction over the NBA's declaratory judgment action against the NBPA.[6]

---

[6] Significantly, when it has suited its aims, the NBPA itself has asserted that it is a proper party for injunctive relief in an antitrust action. *See* Buchanan Decl. Ex. 3 (Compl., *Lanier v. National Basketball Ass'n*, No. 82 Civ. 4935 (S.D.N.Y. July 28, 1982)), at ¶ 29; Buchanan Decl.
*(cont'd)*

Moreover, the district court in *National Hockey League* erroneously held that there was no case of actual controversy because the individual players had asserted that they had no present intention to bring an antitrust suit, while, according to defendants, apparently preserving their right to bring the suit in the future. *National Hockey League*, 789 F. Supp. at 295. That holding is inconsistent with – among other decisions – the Second Circuit's earlier decision in *Kidder, Peabody*, where the appeals court held that, unless the defendant has entered into a binding, judicially enforceable agreement not to bring suit, a mere representation that it does not intend to sue is insufficient to deprive the court of subject matter jurisdiction over a declaratory judgment action. *Kidder, Peabody*, 925 F.2d at 563; *accord Cosa Instrument Corp.*, 698 F. Supp. 2d at 350; *Carlin Equities Corp.*, 2007 WL 2388909, at *3.

Finally, the Minnesota court drew the wrong conclusion from its observation that it is "no secret to these parties, to this Court, or to the average eight-year-old sports fan that antitrust issues exist in professional sports." *National Hockey League*, 789 F. Supp. at 295. That statement tends to support, not undermine, the conclusion that Article III jurisdiction is satisfied. The existence of a history of litigation between the parties renders a present threat of litigation more immediate and real, not less. *See, e.g., Blackman v. Hadron, Inc.*, 450 F.2d 781, 782 (2d Cir. 1971) (a litigious atmosphere and the effects of unresolved charges of infringement from prior litigation between the parties continued the threat of litigation and constituted a justiciable controversy); *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1000 (2d Cir. 1969) ("the history of fierce litigation between the parties" "strongly evidence[s] a justiciable controversy"); *Kos Pharms., Inc. v. Barr Labs., Inc.*, 242 F. Supp. 2d 311, 315 (S.D.N.Y. 2003) (prior history of

---

*(cont'd from previous page)*
Ex. 4 (Verified Class Action Compl., *Bridgeman v. National Basketball Ass'n*, Civ. No. 97-4001 (D.N.J. Oct. 1, 1987)), at ¶ 16.

13

patent litigation between the parties supported the finding of subject matter jurisdiction where "the litigation between the parties involve[d] the same technology as the patent that is subject to the declaratory judgment action before the Court"); *In re Casino de Monaco Trademark Litig.*, No. 07 Civ. 4802 (DAB), 2010 WL 1375395, at *9 (S.D.N.Y. Mar. 31, 2010) ("While a threat of suit is not necessary to declaratory judgment jurisdiction, an aggressive litigation strategy (such as what was demonstrated in this three year litigation) may signal the existence of an actual controversy."); *see also Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1364 n.1 (Fed. Cir. 2009) (explaining that "[a] history, or the lack thereof, of litigating in the industry can certainly be a factor to be considered" when a court analyzes whether a dispute presents a case of actual controversy); *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 776 (D. Md. 2009) ("Prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy.") (quoting *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008)).

In sum, there is no collective bargaining exception to the legal standard for subject matter jurisdiction. Where, as here, the legal dispute between the parties is concrete and real, and not hypothetical and abstract, the dispute is justiciable, and the Court has subject matter over the declaratory judgment action.

### III. Defendants' Accusation About Forum Shopping Further Demonstrates The Existence Of A Case Of Actual Controversy Between The Parties

A declaratory judgment plaintiff, like any plaintiff, is entitled to select the forum in which to bring his action, subject of course to personal and subject matter jurisdictional constraints. As the NBA previously explained in its pre-motion letter, this district is the most appropriate forum in which to litigate this declaratory judgment action because the NBA and the NBPA are both headquartered in this district, their employees and documents are located in this

14

district, the NBA made its decision to commence the lockout in this district, virtually all of the collective bargaining negotiation sessions have taken place in this district, and the parties have litigated prior antitrust claims in this district.

Defendants' complaint that the NBA has engaged in impermissible forum shopping suggests only that defendants have another preferred forum in mind for their antitrust challenge to the NBA's lockout. Indeed, they refer to themselves as the "actual plaintiffs" and to the NBA as the "preemptive plaintiffs" in their brief. (Def. Br. at 24.) Such assertions put the lie to defendants' claim that there is not a real and concrete legal dispute between the parties over the antitrust legality of the NBA's lockout. The fact that defendants also could invoke the jurisdiction of a federal court does not vitiate the NBA's right to do so, and the cases on which defendants rely do not hold otherwise.[7]

As noted above, the purpose for the Declaratory Judgment Act is to allow a party to be free from the whim of its adversary in deciding when to resolve the legal dispute between them. Defendants apparently would prefer to leave unresolved the legal dispute as to the NBA's lockout until such time as the resolution of that dispute would suit defendants' collective bargaining aims. But, under the law, the NBA need not wait until defendants decide whether and when to resolve the dispute, for it is definite and concrete and ripe for adjudication now.

---

[7] Indeed, *Perez v. Ledesma*, 401 U.S. 82 (1971), supports the NBA's position. Although defendants offer a partial quote from Justice Brennan's separate opinion (not the opinion of the Court), the full sentence reads: "The federal declaratory judgment is not a prize to the winner of a race to the courthouses, but rather a declaration of rights that obviates the need to risk a state criminal proceeding or a race to the courthouses." *Id.* at 119 n.12 (Brennan, J., concurring in part and dissenting in part). As *MedImmune* and other decisions make clear, civil litigants similarly may avail themselves of the declaratory judgment procedure to avoid the risk of damages. The NBA's complaint here is not attempting to race to the courthouse; it is seeking a timely declaration of rights with respect to the antitrust legality of the ongoing lockout, without being subject to the whim of the NBPA and players.

## *Conclusion*

For all the foregoing reasons, the Court has subject matter jurisdiction over the NBA's declaratory judgment action, and defendants' motion to dismiss for lack of subject matter jurisdiction should be denied.

Dated: October 10, 2011
     New York, New York

Respectfully submitted,

/s/ Jeffrey A. Mishkin

| | |
|---|---|
| Howard L. Ganz<br>Howard Z. Robbins<br>**PROSKAUER ROSE LLP**<br>11 Times Square<br>New York, New York  10036<br>Telephone:  (212) 969-3035<br>Facsimile:  (212) 969-2900<br>hganz@proskauer.com<br>hrobbins@proskauer.com | Jeffrey A. Mishkin<br>Anthony J. Dreyer<br>**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**<br>Four Times Square<br>New York, New York  10036<br>Telephone:  (212) 735-3000<br>Facsimile:  (212) 735-2000<br>jeffrey.mishkin@skadden.com<br>anthony.dreyer@skadden.com |
| Richard W. Buchanan<br>**NATIONAL BASKETBALL ASSOCIATION**<br>645 Fifth Avenue<br>New York, New York  10022<br>Telephone:  (212) 407-8000<br>Facsimile:  (212) 888-7931<br>rbuchanan@nba.com | Of Counsel:  Paul D. Clement (admitted *pro hac vice*)<br>**BANCROFT PLLC**<br>1919 M Street, N.W., Suite 470<br>Washington, D.C.  20036<br>Telephone:  (202) 234-0090<br>Facsimile:  (202) 234-2806<br>pclement@bancroftpllc.com |

*Attorneys for Plaintiffs*